# CHARLESTON.

## BOARD *v.* WILSON.

Submitted January 15, 1891.—Decided January 24, 1891.

SALE—DEFICIENCY IN QUANTITY OF LAND—ABATEMENT IN PRICE —VENDOR'S LIEN.

P., having purchased a tract of land from M. by parol contract, on which part of the purchase-money remained unpaid, and having taken possession of the same, and made valuable improvements thereon, contracted by parol to sell the same to W., representing it to contain fifty acres, at eight dollars and fifty cents per acre, and agreeing that M. should convey to him the legal title, which M. agreed to do, provided one hundred dollars of the purchase-money due him on the land from P. was paid or secured, but stated to W., in the presence of P., that said tract did not contain as much as fifty acres, and that he would not be responsible for any deficiency. P., however, asserted that the tract had been surveyed, and that it did contain fifty acres or more ; and W. then stated that, if the deficiency did not exceed two acres, he would make no reduction, but if it lacked more he would claim an abatement at the rate of eight dollars and fifty cents per acre for what it lacked, which was agreed to by P. ; and thereupon W. paid one hundred and fifty dollars cash, and executed his notes for certain deferred installments, two of which, for fifty dollars each, were delivered to M. for the balance of purchase-money due him, and a note for one hundred dollars was given to P., which by assignment became the property of B. ; and M. entered into a written agreement with W. to convey him the legal title to said tract of land, describing it as a
77

certain tract of land containing fifty acres, now occupied by P. In a suit in equity, brought by B., the assignee of said one hundred dollar note, to enforce the vendor's lien against said tract of land, *held*,

I. The sale of said tract of land was a sale by the acre and not a sale in gross.

II. It being shown that said tract of land lacked sixteen acres and fifty one poles of containing fifty acres, W. was entitled to an abatement of the purchase-money at the rate of eight dollars and a half per acre for said deficiency.

III. The vendor of an equitable right or title to land is entitled to enforce the vendor's lien for purchase-money whenever under the same circumstances the vendor of the legal title could assert an equitable lien for such purchase-money.

IV. The assignee of a single bill, which was executed for the purchase-money of a tract of land, has the right to assert and enforce the vendor's lien in a court of equity whenever such vendor would be entitled to enforce the same.

*Wells & Pendleton* for appellant, cited :

Rob. (old) Pr. 151, 152 ; 2 Munf. 282 ; Id. 518 ; 4 Munf. 496 ; Jones Liens § 1102 ; Pom. Cont. §§ 323, 327 ; 1 Pet. 455 ; 19 Gratt. 571 ; 3 Munf. 29 ; 10 W. Va. 60 ; 11 W. Va. 175 ; 8 W. Va. 174; Id. 210 ; 26 W. Va. 379 ; Code, c. 125, s. 29 ; 4 W. Va. 273 ; 23 W. Va. 744 ; 24 W. Va. 524 ; 19 W. Va. 441; 21 W. Va. 326 ; Id. 632 ; 22 W. Va. 247 ; 31 W. Va. 137 ; Sand Suit Eq. (2d Ed.) 590 ; 2 Munf. 182 ; 3 Gratt. 235 ; 31 W. Va. 427.

*J. G. Schilling* for appellee, cited : 22 W. Va. 401 p't 1, Syll.; Id. 412 ; 19 W. Va. 442, p'ts 18, 19, Syll.; 21 W. Va. 327 p'ts 3, 4, Syll.; Id. p'ts 14, 15, 16, Syll.; 26 W. Va. 609 ; 28 W. Va. 389.

ENGLISH, JUDGE :

On the 18th day of March, 1885, the appellant, Abraham Wilson, purchased by parol contract from one William H. Potts a certain tract of land situated in Roane county, which said Potts represented to him contained fifty acres, for which said Wilson agreed to pay eight dollars and fifty cents per acre, and in compliance with his contract he did pay said Potts one hundred and fifty dollars in cash, and executed four single bills, falling due at differ-

ent times, for the deferred payments; two of which single bills were made payable to John S. McCauly, from whom said Potts purchased said land, and who still held the legal title thereto. One of said single bills, which was for one hundred dollars, and fell due on the 10th day of December, 1886, was assigned by said William H. Potts to S. McGinty for ten acres of land, and by said McGinty was assigned to J. N. Board, the appellee. On the 9th day of February, 1887, said J. N. Board brought a suit in equity in the Circuit Court of Roane county against said Abraham Wilson, William H. Potts, S. McGinty, and John McCauly, alleging in his bill that said Potts was the son-in-law of said McCauly, and that many years ago said McCauly agreed with said Potts that he would convey to said Potts fifty acres of land lying on the waters of Left Reedy creek, in the district of Curtis, in said county of Roane, and that said Potts, relying on said agreement, made large and valuable improvements on said tract of land, and built houses thereon, and cleared about twenty five acres thereon and that all of said land was in forest at the time said Potts purchased it, but that no writing passed between said Potts and McCauly evidencing said contract and sale; that afterwards, to wit, on the 18th day of March, 1885, said Potts sold said fifty acres of land to defendant Abraham Wilson for a sum to the plaintiff unknown, but that, among other things given as a consideration therefor, the defendant Abraham Wilson made and executed his note for one hundred dollars with interest, payable on the 10th day of December, 1886, to the defendant William H. Potts as part payment on said fifty acres of land; that no writings of conveyance of said fifty acres of land passed from said Potts to said Wilson on said 18th day of March, 1885, because said John McCauly had not yet conveyed the same to said defendant W. H. Potts; but, the plaintiff alleged, on said 18th day of March, 1885, the defendant John McCauly ratifying and recognizing his contract with the defendant, W. H. Potts, did by his own writing at that time agree to and with the defendant Abraham Wilson to make said Wilson a general warranty deed for said fifty acres of land, for and on behalf of said

W. H. Potts, on or before the 1st day of December thereafter, which writing he alleged was in the possession of said A. Wilson, and had never been by him recorded in the County Court clerk's office. The plaintiff then sets forth the facts in regard to the transfer of said one hundred dollar note to McGinty, and the consideration therefor, and that he purchased said note for a valuable consideration from said McGinty, and that he is now the owner of the same, which he exhibits with his bill. He also alleged that no part of said note had been paid to him by any person, and that the defendant Abraham Wilson refuses to pay the same, because the defendant John McCauly, in violation of his written agreement, wilfully refused to make said deed to said Wilson for said fifty acres of land; that the said McGinty was totally insolvent, and that the defendant Potts has no personal property whatever, and no real estate except the said ten acres purchased from the defendant McGinty, which is not worth more than fifty dollars at most; and he prayed that the defendant Wilson might be compelled to file said written agreement between himself and the defendant, McCauly, in the papers of the cause, and that said John McCauly, in pursuance thereof, may be compelled to make said deed for said fifty acres of land, and that the plaintiff's lien might be reserved on the face of said deed, and that said lien might be enforced, and for general relief.

On the 1st day of September the defendants, J. S. McCauly and Abraham Wilson, demurred to the plaintiff's bill, which demurrers, being considered by the court, were overruled and disallowed, and a rule was given the defendants J. S. McCauly, S. McGinty, and William Potts to answer the plaintiff's bill by the 3d day of September, 1887, and thereupon the defendant Abraham Wilson tendered in open court his answer to plaintiff's bill, which on motion was ordered to be filed, and the plaintiff replied generally thereto.

The defendant, Wilson, in his answer admits that there was a parol agreement between said McCauly and Potts, whereby said McCauly agreed to convey to said Potts, by proper deed, a tract of land containing fifty acres, and that

the boundary of said tract was laid off and set apart to said Potts by said McCauly, and the same was represented to contain fifty acres ; that said Potts took possession of the same under said parol contract, and cleared, or partly cleared, about twelve or fifteen acres of said land ; but he denies that said Potts cleared twenty five acres of said land, or that he improved that amount, or any quantity thereof, so that the same was in good state for cultivation, or that he built any houses thereon other than a small log hut. He admits that said Potts sold said land to him, and that in pursuance of said contract of sale the defendant McCauly executed a writing by which he agreed to convey to respondent fifty acres of land in lieu of a conveyance to Potts, as he was bound to do under their said parol contract; and he exhibits said written agreement with his answer.   Respondent Wilson also says that by the terms of said written contract said McCauly agreed to make said deed for fifty acres of land on or before the 1st of December, 1885, but that he has wholly failed to make the same ; that at the time he bought respondent took possession of the same, being the boundary previously laid off by said McCauly to said Potts, and the same boundary represented by said McCauly to said Potts to contain fifty acres of land, and that since he took possession of said land he has made valuable and permanent improvements thereon, such as building a barn and dwelling-house, costing three hundred dollars or four hundred dollars; that he agreed to pay said Potts eight dollars and fifty cents per acre for said fifty acres of land, and that the calculations were made, and the notes for the deferred installments were drawn by one George C. Brown, and that said Brown made a mistake in said calculation to the prejudice of respondent, in this : that he made the total amount of said purchase-money for said fifty acres of land at eight dollars and fifty cents per acre amount to four hundred and fifty dollars instead of four hundred and twenty five dollars, and that he did not discover said mistake at the time he executed said notes for the deferred instalments; that said sale of said fifty acres of land to him by the said Potts was a sale by the acre, and not a sale in gross, and that at the time said sale was made the said McCauly

and Potts both represented to respondent that there were fifty acres of land in said boundary, and said McCauly, by his written contract, agreed to convey to respondent fifty acres of land, with covenants of general warranty, and that, relying on said representations as to quantity made by said McCauly and Potts, he was induced to give eight dollars and fifty cents per acre for the said land, and with that understanding he paid said money, and executed his said single bills; that said boundary did not contain fifty acres, but was found to contain only thirty three acres and one hundred and nine poles of land, making a deficiency of sixteen acres and fifty one poles in said tract, which at the price agreed to be paid, eight dollars and fifty cents per acre, amounts to one hundred thirty eight dollars and seventy one cents, which amount he prays may be abated from the purchase-price agreed to be paid by respondent for said land; that neither the said Potts nor McCauly have complied with their contract with him, but that they have failed to make him a deed for said fifty acres of land, or any other quantity, and for this reason neither they nor their assignees have any right to invoke the aid of a court of equity to assist them in specifically enforcing said contract. He denies the insolvency of McGinty, and says that Potts still owns said ten acres of land purchased of McGinty, and he denies that the plaintiff, or any one else, has any lien on said land bought by him of said Potts; and he prays that said mistake of twenty five dollars made by George C. Brown in drawing said single bills may be corrected, and that said sum of one hundred thirty eight dollars and seventy one cents may be abated from the purchase-money agreed to be paid by him to said Potts and McCauly.

The defendant J. S. McCauly also answered said bill, denying that he agreed to convey fifty acres of land to the defendant Potts lying on Left Reedy creek, and saying that he did not represent to said Potts or to the defendant Wilson that said tract of land contained fifty acres; and also alleged that several years ago he gave to his daughter, the wife of said Potts, about twenty five acres of land, and sold said Potts the residue of a certain boundary, which was well defined with natural corners and marked lines, and

agreed that whenever Potts paid him for the residue of said tract of land he would convey to him the whole of said boundary by proper deed; that about the 18th day of March, 1885, the defendants Wilson and Potts came to him, and represented that said Potts had sold to said Wilson the tract of land occupied by said Potts, and he then informed said Wilson that he did not believe the said tract or boundary of land would hold out fifty acres, but if the money that was due him was paid he would execute a title-bond, and would convey said Wilson the said boundary of land then occupied by said Potts; and that said sale to the defendant Wilson was a sale in gross, and not a sale by the acre, nor was the same any warranty that there was fifty acres in said tract; and that on the 18th day of March, 1885, the said Abraham Wilson executed to him his two certain notes or single bills, whereby he promised to pay the respondent fifty dollars on or before the 10th day of September next thereafter, and also fifty dollars on or before the 10th day of December next thereafter, and delivered said notes to respondent as part of the consideration for said tract of land, and he claimed that he has a vendor's lien on said tract of land for the amount of said notes, which, although long since due, had not been paid; that he was willing and offered to make said Wilson a deed with general warranty for said Potts boundary of land before the 1st of December, 1885, but that said Wilson declined to receive the same; and he files such a deed with his answer, and says that, as he does not know the amount of purchase-money remaining unpaid thereon, he can not reserve the vendor's lien; and he asks that the deed may not be delivered to the defendant Wilson until the whole of the purchase-money is paid or properly secured to be paid, and he files said notes with his answer. He also denies that he agreed to make said Wilson a general warranty deed for said fifty acres of land for and on behalf of said Potts, but that he agreed by said writing to convey to said Wilson the tract of land occupied by the defendant Potts; and he prays that a vendor's lien for the purchase-money represented by said two notes filed with his answer may be enforced, and that said land may be subjected to the payment of the same *etc•*

Several depositions were taken in the cause, and on the 4th day of September, 1888, the cause was heard upon the bill and the answers of said Wilson and McCauly, and the exhibits therewith filed, and the general replications thereto, and the depositions taken in the cause; and the court held that the defendant Wilson was entitled to an abatement of twenty five dollars from the purchase-money on account of the mistake made in executing the purchase-money notes; and that the contract of sale in writing between said McCauly and Wilson was a sale in gross; and that the said defendant Wilson was not entitled to any abatement because of deficiency in quantity; ascertained the amount the plaintiff and defendant McCauly were entitled to recover from the defendant Wilson after deducting said sum of twenty five dollars on account of said mistake; and directed that, unless the amount so ascertained and decreed against said defendant Wilson be paid, together with the costs of suit, in twenty days, said tract of land be sold by special commissioners therein named to satisfy the amounts therein decreed; and also directed the defendant McCauly, within thirty days to convey to the defendant Abraham Wilson, with general warranty, the tract of land mentioned in the writing signed by said McCauly, and filed with said Wilson's answer, and within said thirty days file said deed with the clerk of said court; and also directing that said deed should be made and filed before any sale should be made under said decree. From this decree the defendant Wilson applied for and obtained this appeal.

The first error assigned and relied upon by the appellant Wilson is that it was error to overrule his demurrer to the plaintiff's bill, because said bill shows no case for equitable relief; claiming that there was no lien to enforce, and that the plaintiff's assignor was in default. The plaintiff by his bill asserts his right to subject the tract of land therein mentioned to sale, for the reason that he is the holder by assignment of one of the single bills which was executed by the defendant Wilson to the defendant William H. Potts as part of the purchase-money for said tract of land. It is alleged in the bill that the defendant Abraham Wilson contracted for the purchase of said tract of land from the

defendant William A. Potts; that the legal title to said land was still vested in John McCauly at the time of said contract, and that a part of the notes for the purchase-money were executed by said Wilson to said McCauly for the balance of purchase-money due thereon to him by said Potts, and a portion of said notes were executed to said Potts by said Wilson for his equitable interest in said land, one of which, for one hundred dollars, was assigned by him to McGinty, and by McGinty to the plaintiff; and to carry into effect said contract between said Wilson and Potts the said McCauly agreed in writing with said Wilson to convey him the legal title, which was in pursuance and part performance of the parol contract between said Wilson and Potts. What rights, then, with reference to the enforcement of the collection of the single bill assigned to him indirectly from said Potts, did the plaintiff acquire by virtue of said assignment?

We find in Barton's Chancery Practice, p. 1050, that the author says: "The assignment of a debt is the assignment of a judgment, mortgage, deed of trust, or lien by title retained that secures it without any formal assignment, transfer, or even mention of the security itself." See *Hanna* v. *Wilson*, 3 Gratt. 243. In the case of *Sloan* v. *Campbell*, 71 Mo. 387, it was held that "the assignee of a note given for the purchase-money of land may enforce the vendor's lien against the land in the hands of the vendee, the same as the vendor himself." And in the case of *Poe* v. *Paxton*, 26 W. Va. 607, this Court held that "the vendor of an equitable right or title to land retains an implied lien on it for the consideration, whenever, under the same circumstances, the vendor of the legal title would hold an equitable lien. The same principle and reason apply to both cases, except that our statute (Code, c. 76, s. 1) qualifies the latter, while it has no effect upon the former." The material facts stated by the plaintiff are that the defendant Potts sold his equitable title to the tract of land in the bill mentioned to the defendant Wilson, and for part of the purchase-money took from him a note of one hundred dollars, exhibited with the bill, which had been assigned to plaintiff for a valuable consideration; that the legal title

was in McCauly at the time of the sale, and so remains; that said Potts had purchased said land from McCauly by parol contract, and had made valuable and permanent improvements thereon by building houses and clearing the land; that said McCauly acquiesced in said contract of sale, and to carry the same into effect agreed in writing, when the purchase-money was paid, to convey the legal title to said Wilson; that no part of the one hundred dollar note held by him as assignee has yet been paid; that said McGinty is insolvent, and the defendant Wilson refuses to pay the same, because said McCauly, in violation of his written agreement, refuses to make him a deed for said land; that Potts has no personal property and no real estate, except said ten acres purchased from the defendant McGinty, which is not worth more than fifty dollars; and he prays that his lien may be enforced against said land. With reference to the one hundred dollar note held by the plaintiff as assignee, he would possess the same rights and remedies as the defendant Potts would have done had he never parted with the note by assignment, and, as Potts would have been entitled to enforce the vendor's lien against said land in the hands of Wilson, the plaintiff would have the same right; and, taking the allegations of the bill to be true, as we must, upon demurrer, I am of opinion that the demurrer to the plaintiff's bill was properly overruled.

It is also claimed that the court erred in failing to give the appellant a rule to answer after his demurrer was overruled, but it appears by the same decree which overruled the appellant's demurrer that he appeared in open court, and tendered his answer, and he must be considered to have waived the rule to plead.

Regarding the case, then, as presented by the pleadings and proofs, we find that the defendant, John S. McCauly, in his answer denies that he represented to either the defendant Potts or Wilson that said tract of land contained fifty acres, and says that he informed both Potts and Wilson on the 18th of March, 1885, when they requested him to give said Wilson a title-bond for the land occupied by said Potts, that he did not believe said tract would hold out fifty acres, but if the money that was owing him was paid

or secured to be paid he would sign such writing or title-bond, and would convey to said Wilson said boundary of land ; that said sale was a sale in gross, and not by the acre, and there was no warranty that there were fifty acres in said tract; that said Wilson executed to him two notes for fifty dollars each, one payable on the 10th day of September next thereafter, and the other on the 10th day of December next theaeafter, as part of the consideration for said tract of land, and he signed said writing exhibited with the defendant Wilson's answer; that said two notes have long since been due and unpaid, and he claims a vendor's lien on said tract of land for the amount of said two notes ; and he further says that he offered and was willing to make said Wilson a deed with general warranty for said Potts boundary of land before the 1st of December, 1885, and on that day, but the said Wilson declined and refused to receive the same, and that he tenders and files such a deed with his answer; that he does not retain a vendor's lien, because he does not know the amount of purchase-money remaining unpaid, but asks that said deed be not delivered to said Wilson until the purchase-money is paid ; he denies also that he agreed to make said Wilson a general warranty deed for said fifty acres of land for and on behalf of said W. H. Potts ; and he prays that his vendor's lien for purchase-money represented by said two fifty dollar notes may be enforced.

The defendant Wilson, as we have seen, claims that Potts purchased from said McCauly said tract of land containing fifty acres; that said McCauly represented to sa'd Potts that the boundary set apart to him contained fifty acres, and that said McCauly agreed in writing to convey him fifty acres of land on or before December 1, 1885 ; that he took possession of said land, and made valuable improvements, costing three hundred dollars or four hundred dollars ; that he agreed to pay said Potts eight dollars and fifty cents per acre for said fifty acres of land; that said Brown made a mistake of twenty five dollars in ascertaining the gross amount, and he executed his notes for that much in excess of what he was to pay for the same; that said sale to him by Potts was a sale by the acre, and

not a sale in gross; that both said McCauly and Potts at the time of the contract represented to him that the boundary contained fifty acres of land, and with that understanding he paid cash, and executed his notes for the purchase-money; that upon having said boundary surveyed he found it contained only thirty three acres and one hundred and nine poles, making a deficiency of sixteen acres and fifty one poles in said tract amounting, at eight dollars and fifty cents per acre, to one hundred thirty eight dollars and seventy one cents which amount he asked to have abated, and also asked that said mistake of twenty five dollars against him might be corrected. The defendant John S. McCauly, in his deposition, speaking of the time. when the contract was made between the defendants Potts and Wilson, says: "They came to my house, and said they were on a trade, and Potts said he was selling Wilson fifty acres of land, and wanted to know if I would make a deed for the land. I told him I would make a deed for a certain boundary—it goes by the name of 'Potts' boundary'—and I was satisfied there was a lack in it; it would not hold out the fifty acres by some ten or eleven acres. Wilson then made mention that he did not care for one or two acres, but, if it lacked any more, that he would deduct it from the purchase-money at eight dollars and fifty cents per acre. I think Potts said: 'All right.' I told them before they went further to get a surveyor, and run it off, and be certain what they were doing. Potts said it was not worth while. He had got Hugh Kyger to run it off and plat it, and there was fifty acres. He said a little more. The agreed price between Potts and Wilson was eight dollars and fifty cents per acre for the land. They went to George Brown's, and brought an article or title-bond back for me to sign. I refused to sign it, on account, as I thought, there would be a lack in the land. Both Wilson and Potts agreed that, if I would sign it, they would not hold me responsible for any lack of land. Wilson agreed, if there was more than fifty acres, he would pay Potts eight dollars and fifty cents per acre; and, if there was less than fifty acres, it was to be deducted at eight dollars and fifty cents per acre. I signed the bond with

the understanding that I was not to be responsible for any lack" *etc.*

It is also shown by the deposition of James S. Cox that Potts told him, in the presence of Wilson, on the road between the house of William H. Potts and J. C. Brown, that he had sold out to Wilson, and they were on their way to get Brown to write up the title-bond; that he sold the land for eight dollars and fifty cents per acre; and the defendant Wilson, in his deposition, confirms the evidence of the defendant McCauly, and states that said Potts agreed to sell him the land at eight dollars and fifty cents per acre, in the presence of said McCauly; and that Mr. McCauly said it would not hold out fifty acres, but that he would make a deed to him for the boundary; and that he then told Mr. Potts if it only lacked an acre or two he would make no reduction, but if it lacked any more he would make reduction at eight dollars and fifty cents per acre for what it lacked. He also confirms the statement of said McCauly that he would not be responsible for any more land than there was in the boundary, and that whenever the land was surveyed he was ready to make a deed, for the number of acres in the boundary, and that said Potts agreed to it.

It is also proven by J. D. Kyger that he surveyed said boundary on the 14th day of December, 1886, and found it to contain thirty three acres and one hundred and nine poles, and that said survey was made in the presence of John S. McCauly and the defendant Wilson. The evidence in this case then clearly discloses the fact that the defendant Wilson purchased this tract of land from William H. Potts by a parol contract, and not from John S. McCauly by written contract; that the sale made by Potts to Wilson was a sale by the acre, and not a sale in gross; that Potts, at the time the contract was made, in the presence of McCauly confidently asserted that there were fifty acres of land in said boundary; that he had had it surveyed by Hugh Kyger, and the defendant Wilson had a right to rely on his statements, although McCauly contended there was not that much land in the survey, and told both Wilson and Potts that he would not be responsible for any

deficiency in the quantity contained in said tract, and in the agreement to convey to Wilson described it as a certain tract of land containing fifty acres, now occupied by William H. Potts.

The evidence clearly shows that by the contract between the defendants Wilson and Potts said Wilson was to pay eight dollars and fifty cents per acre for any excess of fifty acres in said tract, and, if the deficiency exceeded one or two acres, he was to have an abatement in the purchase-money at that rate per acre. It is also clear that the written agreement between J. S. McCauly and A. Wilson was not a contract for the sale of the land, but merely an agreement to convey the title to the tract of land therein mentioned to the defendant Wilson, which he had previously sold to Potts, his son-in-law.

In the case of *Crislip* v. *Cain,* 19 W. Va. 441, p't 15, Syll., this Court held that, "as the vendee of land has the right to rely on the statement of the vendor as to the number of acres in a tract of land which he sells, and naturally does rely upon it, and as the quantity of land is generally a material matter in the purchase of a tract. of land, it ought *prima facie* to be regarded that the vendee was induced to pay or agree to pay the price named in the contract or deed because of the statement in it by the vendor of the number of acres, which statement, if positive, should be regarded as a statement made on the personal knowledge of the vendor; and therefore, in the absence of all other proof, the vendor must be regarded as guilty of fraud on the vendee, and a court of equity should, for this reason, require the vendor to make a proportionate abatement from the purchase-money." The same thing, in substance, was held in the case of *Anderson* v. *Snyder,* 21 W. Va., 633, p't 6, Syll.

The evidence in this case, however, clearly shows that the contract for the sale of this land was a parol contract made between the defendants Potts and Wilson, and that it was not a sale in gross, but a sale by the acre, in which said Wilson purchased at eight dollars and a half per acre, and he was to pay at that rate for the excess over fifty acres, and was to have an abatement at the same rate per acre if

the deficiency exceeded one or two acres.   I therefore conclude that the court erred in refusing to allow the defendant Wilson an abatement at the rate of eight dollars and a half per acre for the sixteen acres and fifty one poles of land, which was found to be the deficiency in the number of acres contained in said tract of land, from the quantity represented by the vendor Potts.

It is assigned as error that the court made a decree for the sale of the land before a proper deed had been executed and tendered to the defendant Wilson, or filed in the papers of the cause, and that it was also error to require the defendant Wilson to pay the amounts decreed against him ten days before said McCauly was required to file a deed with the clerk; and while it is regarded as the better practice to require a deed to be tendered by the party holding the legal title, and seeking to enforce the vendor's lien, yet it is not considered error in decreeing a sale for purchase-money to direct a sale, as was done in this case, but directing in the same decree that the sale shall not be made until a proper deed is made and filed; neither do I regard it as error to direct the purchase-money to be paid into court before said deed or sale is made, as the court can hold the money until the deed has been made.   For the reasons before stated the decree of September 4, 1888, must be reversed, and the cause remanded for further proceedings to be had therein, with costs to the appellant.

REVERSED.   REMANDED.