# CHARLESTON.

## KIMBLE v. WOTRING *et al.*

### Decided December 8, 1900.

1. EQUITY—*Filing Answer—Hearing of the Cause.*
   Under section 53, chapter 125, Code, it is the right of a defendant in equity to file his answer at any time before final decree, although he may be in default for want of an answer; but the hearing of the cause is not to be delayed thereby unless for good cause shown. (pp. 419, 420).

2. WIFE'S SEPERATE ESTATE—*Creditors.*
   When a married woman allows her separate estate to be indistinguishably mixed with the property of her husband, hers is lost to her as separate estate as to the creditors of the husband. (p. 422).

3. FRAUDULENT CONVEYANCE—*Subrogation.*
   Where a conveyance is set aside as fraudulent as to creditors, the fraudulent vendee in such conveyance, who has paid a vendor's lien on the land conveyed as part of the consideration for the fraudulent purchase, will be subrogated to the rights of the original holder of the vendor's lien against the land. (p. 423).

Appeal from Circuit Court, Tucker County.

Suit by John A. Kimble against B. E. Wotring and others.

Judgment for plaintiff.   M. E. Wotring and M. E. Lipscomb, defendants, appeal.

*Reversed in part.*

J. P. SCOTT, for appellants.

CUNNINGHAM & STALLINGS, for appellee.

MCWHORTER, PRESIDENT:

This is a suit brought by John A. Kimble in the circuit court of Tucker County against B. E. Wotring, Margaret E. Wotring, L. W. Hickman, C. F. Kennewig, Isaac I. Thompson and Mollie E. Lipscomb, for the setting aside of a deed from C. F. Kennewig to Margaret E. Wotring, dated July 22, 1897, and also a deed from Margaret E. Wotring to Mollie E. Lipscomb, dated August 20, 1897, as fraudulent and void as to plaintiff's claim against B. E. Wotring and to subject the real estate conveyed by said deeds to the payment of said claim. Plaintiff was surety on a note of B. E. Wotring to Frank Layton for three hundred dollars, dated April 16, 1895. Layton brought his action before a justice of Tucker County on the 12th of Jnue, 1897, who rendered judgment in his favor against said Wotring and Kemble for three hundred and thirty-nine dollars and ten cents, being the amount of said note with its interest to the date of the judgment and the costs of the suit. Kimble paid off the judgment without execution issued, and caused the judgment to be recorded in the judgment lien docket of said county in the office of the clerk of the county court, and claims to be entitled to subrogation to the rights of Frank Layton against said B. E. Wotring, in the enforcement of said judgment. At October rules, 1897, said Kimble filed his bill in the clerk's office of the circuit court of Tucker County against B. E. Wotring, Margaret E. Wotring, L. W. Hickman, C. F. Kennewig and Isaac I. Thompson setting up said judgment, that at the time said judgment was obtained said B. E. Wotring had no personal property by which said judgment could be made, nor had he had any since that time, as various executions had been issued against him on other judgments on which said Wotring rendered a schedule, and said executions were returned showing no property found, subject to a levy of an execution, and that after frequent demands by said Layton of said plaintiff he paid off and fully dis-

charged said judgment without an execution being issued; that he had a transcript of said judgment docketed in the judgment lien docket; that his payment of it entitled him to be subrogated to the rights of Layton and the right to come into a court of equity and enforce the payment of said judgment out of any interest, legal or equitable, owned by the said B. E. Wotring in any real estate in Tucker County, that said judgment is a lien on said interest from the time of its docketing, and should be enforced in his favor, and refers to a judgment also in favor of Isaac I. Thompson against said Wotring for one hundred and forty-one dollars and fifty-five cents, also docketed in the said lien docket, but which plaintiff alleges has been paid; that on the —— day of ————, 1897, said B. E. Wotring representing himself as agent for Margaret E. Wotring, his wife, entered into a written contract with L. W. Hickman, by which Hickman was to convey to Margaret E. Wotring certain real estate in Hulings, Tucker County, for a valuable consideration, the exact amount of which unknown to plaintiff, but charging that the principal part thereof was paid by personal property which individually belonged to B. E. Wotring, and that the whole consideration, both in property or money or whatever it might have been that went to the purchase or all that was paid on said property was the individual property of said B. E. Wotring and no other person, or at least his wife Margaret had no interest in it; that at the time of the contract with Hickman the legal title was in C. F. Kennewig, who prior to that time had sold the property to Hickman, but had made no deed for the same, at least the records did not so show, and charging ·that all the purchase money from Hickman to Kennewig and from Wotring to Hickman had been paid; that B. E. Wotring is the equitable owner of said real estate; that said docketed judgment is a lien upon it; that when Wotring made the contract with Hickman representing himself to be the agent of his wife, it was done with a fraudulent intent and with the purpose to defraud, hinder and delay his creditors and especially plaintiff, that he was in no wise acting for his wife, but for himself, that his wife knew nothing of it and had no interest in it, that at the time Margaret had no property or funds of her own by which to purchase said property, nor was she engaged in any business by which she could have made the money to purchase the property at the time nor since that date, nor was it the intention of B. E. Wotring

that his wife should have the same for her own separate use or under her control, or that it should be paid for out of her own individual funds or property; that plaintiff did not know whether there was a deed made from said Kennewig to Hickman or to Margaet E. Wotring, but that if such has been the case such conveyance is fraudulent and should be set aside and cancelled, and prayed that Hickman and Kennewig be called on to answer the bill as to their interests in said property, if any, and if a deed had been made to said Margaret, and if so that it be held to be fraudulent and be cancelled and set aside, and that said property be sold to pay the debts of B. E. Wotring and the liens binding thereon. Margaret E. Wotring filed her demurrer, which being considered was overruled, and said defendant given leave to answer the bill, and plaintiff was granted leave to amend his bill making Mollie E. Lipscomb an additional party. Plaintiff filed his amended bill adopting the allegations of the original bill, and alleging that since the institution of the suit and filing the original bill Margaret E. Wotring has had the legal title which was vested in C. F. Kennewig conveyed to her, and that she has conveyed the same to defendant Mollie E. Lipscomb by deed dated September 24, 1897, in consideration of five hundred dollars as follows, ninety-four dollars to A. M. Cunningham and one hundred and fifty-six dollars cash in hand, and at the same time as a part of the consideration Mollie E. Lipscomb delivered a deed to Margaret E. Wotring conveying a piece of real estate in the town of Whitmer, Randolph County, a copy of which is filed with the bill, and the balance of one hundred and fifty dollars to be paid in sixty days from date of the deed for which Mollie E. Lipscomb gave her note to Margaret E. Wotring; that Mollie E. Lipscomb had knowledge of the fraud that said B. E. Wotring was trying to perpetrate upon his creditors and especially on plaintiff; that while it appears from the record that she purchased this land from Wotring on the 20th of August, which was prior to the institution of this suit, if that be the true date of the purchase, but it further appears that it was not recorded until September 24, 1897, together with the deed from C. F. Kennewig to Margaret E. Wotring, which was made one day prior to the conveyance from Margaret E. Wotring to Mollie E. Lipscomb, both deeds being put on record the day after suit was instituted; that said Lipscomb by having

notice of the fraudulent transaction of the said B. E. Wotring colluded together with B. E. and Margaret E. Wotring in the purchase of said real estate with the express purpose of hindering, delaying and defrauding the creditors of said B. E. Wotring, especially plaintiff, in the collection of his judgment set forth in the original bill, and prays that the deed from Kennewig to Margaret E. Wotring, and from Margaret E. Wotring to Mollie E. Lipscomb be decreed to be fraudulent, cancelled and annulled, set aside and the judgment of plaintiff decreed to be a lien on said property, and the same be sold to satisfy all the liens thereon; that if the court should decide that Lipscomb was an innocent purchaser without notice of the lien of plaintiff's judgment and would not set aside said conveyance to her, that the court would decree plaintiff's judgment to be a lien on the real estate conveyed to Margaret E. Wotring by said Lipscomb in Whitmer and decree said deed to be fraudulent, and cancel, annull and set it aside and that it be sold to satisfy plaintiffs judgment and decree that plaintiff's judgment is a lien on all the purchase money due the said Margaret E. Wotring from said Mollie E. Lipscomb by reason of the sale of land made to the last named party at the time she, said Mollie E. Lipscomb, had notice of the pending of this suit, or that may be in her hands at this time, and decree the note given by Lipscomb to Margaret E. Wotring to be fraudulent and cancel and annul it, and that said Mollie E. Lipscomb be directed to pay the same to plaintiff, and for general relief. Margaret E. Wotring filed her separate answer, denying all fraud or knowledge of fraud, and calling for strict proof, averring that she had no knowledge of her husband's indebtedness to plaintiff, or of the transaction between them, averring that B. E. Wotring, her husband, was her agent in purchasing the property, that he paid none of his own money or property into the purchase, that she had a separate estate and the property was paid for entirely with her money and property, and that her husband had no interest in it whatever, that she received from her father's estate about two thousand dollars, which she had ever since used and controlled as her own money except on one occasion she let her husband have a small sum of money to buy a small farm in Preston County, about the time they were married, but that was all the money she ever permitted him to handle of her own, except she gave absolute and positive instructions as to how it should be used; that the very money

she put into the Hulings house and lot was proceeds arising from the very money which she fell heir to from her father's estate. She further says, "It is true that at the time of the purchase of said property her husband B. E. Wotring used the same for a short time, but that he did so by her consent alone," and she further answering said that for a number of years she had been unable to take charge of her money and interest owing to the fact that she had a large family of small children, which had been dependent upon her for care and protection, and that she permitted her husband to handle her money as she thought the most judicious person to handle the same so as to make same more remunerative to her; that she had been in delicate health all her life, so that she could not enter actively into business for herself; that the sale to defendant Mollie E. Lipscomb was for a valuable consideration and resulted in a good profit to respondent over and above what she paid Hickman for it; that said Lipscomb had no notice of the debt of plaintiff against Wotring. Defendant Mollie E. Lipscomb answered denying all knowledge of fraudulent intent on the part of the Wotrings, averring that she bought the property for a valuable consideration; that she paid on the purchase money due from Hickman to Kennewig ninety-four dollars, that she conveyed clear of incumbrance two lots in the town of Horton of the value of two hundred dollars; that in the month of August, 1897, she paid Margaret Wotring two hundred and ninety-five dollars and eighteen cents, which was in full of all purchase money due on said property; that respondent did not have either actual or constructive notice of plaintiff's debt against Wotring at the time of her purchase and denied each and every allegation of fraud made against her by plaintiff in his bill, and calls for strict proof of said allegations, and plaintiff replied generally to said answers: On the 14th of March, 1898, the cause came on to be heard, when the demurrer of defendant Margaret Wotring to the amended bill, which had been filed at rules, was overruled, and the cause referred to a commissioner to ascertain the matters therein required relative to the real estate or interest therein of B. E. Wotring, the liens on it, etc., and whose funds paid for it, whether his, or his wife's separate and distinct funds, and if by her funds, to what extent. Depositions were taken before said commissioner, after the filing of his report, for both plaintiff and defendants. The commissioner made and filed his report, and to which the

defendants Mollie E. Lipscomb, Margaret E. Wotring and B. E. Wotring filed fifteen exceptions, the first being "Because the said order of reference was improvidently awarded, and that the court erred in referring said cause to a commissioner," and on the 28th of November, 1898, the cause was heard upon said report of commissioner, when the said first exception was sustained, and the court not deeming it necessary to pass upon the other exceptions continued the cause to the next term of the court. On March 14, 1899, the cause was "again heard upon the papers heretofore read, former oders and decrees herein, upon depositions of witnesses taken and filed herein, both for the plaintiff and defendants and upon the exceptions taken by the defendants to plaintiff's depositions, the separate answer of B. E. Wotring tendered at this term of the court, and asked to be filed; exception of the plaintiff to the filing of said answer, which exception was sustained and said answer rejected, and sustained the exceptions taken by defendants to plaintiff's depositions taken on the 3d and 4th of March, 1899, and suppressed said depositions, and the court ascertained from the pleadings and proof that the deed of conveyance from C. F. Kennewig to Margaret E. Wotring, dated 22d July, 1897, conveying to her the house and lot in the town of Hulings was in fraud of plaintiff's rights in the collection of his debt, and that the deed of conveyance from Margaret E. Wotring to Mollie E. Lipscomb dated August 20, 1897, for said house and lot was so conveyed for the purpose of hindering and defrauding the plaintiff in the collection of his debt, and that the said Mollie E. Lipscomb had notice of said fraudulent intent, and it was accordingly decreed that said deeds be set aside, cancelled and annulled as to plaintiff's debt, and ascertained the amount of plaintiff's said debt on the 7th of March, 1899, to be three hundred and eighty dollars and ten cents, and that the same is a lien upon said house and lot in Hulings and providing on the failure of the said B. E. Wotring or some one of the defendants to pay the same within thirty days from the rising of the court, that the said property should be sold to pay said debt, and appointing a commissioner for that purpose, from which decree Margaret E. Wotring and Mollie E. Lipscomb appealed and say, first, that the court ereed in rejecting the answer of the defendant B. E. Wotring, before final decree. This answer was prepared, at least was sworn to on the 6th day of March, 1899, and as appears from the decree

of the 14th of the same month was tendered at that term of the
court before the decree was rendered. The answer raises the
question of the validity of the judgment as against him, denies
allegations of fraud, avers payment of plaintiff's claim before
suit was brought; that property was honestly sold by Wotring to
Lipscomb for valuable consideration without notice of fraud or
fraudulent intent; that Margaret E. Wotring received from her
people in Shenandoah county a large sum of money, a part of
which was used in the purchase of said house, and for a long
time the papers in this cause had been in possession of B. Par-
sons, attorney for plaintiff, and respondent could not be advised
of all the allegations in the bill, and therefore denied all alle-
gations inconsistent with the rights of Mollie E. Lipscomb who
was an innocent purchaser. Section 53, chapter 125, Code, pro-
vides that "At any time before final decree, a defendant may
file his answer, but a cause shall not be sent to rules or continued
because an answer is filed in it, unless good cause be shown by
affidavit filed with the papers therefor." In *Bowles* v. *Woodson,*
6 Grat. 78, syl. pt. 4, it is held: "A defendant, though in de-
fault for want of an answer, ought to be permitted to file any
proper answer, at any time before a final decree; but the trial
of the cause is not to be delayed, unless for good cause shown,"
and *Bean* v. *Simms,* 9 Grat. 389, syl. pt. 1, "It is the right of a
defendant in equity to file his answer at any time before a final
decree is made in a cause," and syl. pt. 2, "When the court had
received the cause when submitted for decision, had examined
the papers, had settled the terms of a decree deciding the prin-
ciples of the cause, though it was an interloctory decree, and a
decree had been prepared and considered by the court and
directed to be entered in the order book but before it had been
entered and on the same day it was directed to be entered, a de-
fendant tendered his answer. Held: The defendant was then
entitled to file his answer." In support of his position that the
court was right in rejecting the answer of B. E. Wotring, ap-
pellee cites *Tracewell* v. *Boggs,* 14 W. Va. 254. But this case
does not help him any. The court is there treating of the filing
of an amended answer. The defendant had filed his answer, to
which there was replication and sought to withdraw his an-
swer and substitute another on the ground that he had forgot-
ten to present a matter of defense in his first answer, and then
it was held that he might be permitted to amend his answer,

setting up such new matter, but in no wise to delay the hearing of the cause. Under the statute the defendant has the right to file his answer at any time before final decree, but the circumstances may be such by reason of his default and negligence that it may not avail him anything in that hearing of the cause. The error in refusing to allow the filing of the answer in this cause is not reversible error, the defendant is not prejudiced by it.

It is also assigned as error under the proofs and pleadings to set aside as fraudulent the deeds from Kennewig to Margaret E. Wotring, and from Wotring to Lipscomb, and in not dismissing the plaintiff's bill on the proofs and pleadings. This raises the question again so long and so well settled in this State as to the presumption in case of purchase by a wife during coverture. In *Rose* v. *Brown,* 11 W. Va. 122, syl. pt. 5, it is held, "In the case of a purchase by a wife during coverture the burden is upon her to prove distinctly that she paid for the thing purchased with funds not furnished by her husband. Evidence that she purchased amounts to nothing, unless it is accompanied by clear and full proof that she paid for it with her own separate funds. In the absence of such proof the presumption is that her husband furnished the means of payment." The same is held in *Stockdale* v. *Harris,* 23 W. Va. 499; and in *McMasters* v. *Edgar,* 22 W. Va. 673; *Herzog* v. *Weiler,* 24 W. Va. 199; *Core* v. *Cunningham,* 27 W. Va. 206; *Burt* v. *Timmons,* 29 W. Va. 441. In case at bar it is alleged in defense that the property was purchased entirely with the separate estate of Margaret E. Wotring; averred in the answers of both Wotring and his wife that she received from her people about two thousand dollars to two thousand five hundred dollars, and is so stated in their own depositions, but there is no other evidence in the cause that she ever received a dollar from that source. If it be true that she inherited or otherwise received such a sum of money, it would not be a difficult matter to prove the fact by the representative of the estate from which she derived it or by others having knowledge of the fact. In her answer Margaret E. Wotring says, "that at the time of her father's death she fell heir to about two thousand dollars in cash, which she has ever since used and controlled as her own money, except on one occasion she let her husband have a small sum of money to buy a small farm in Preston county about the time they were married."

B. E. Wotring says in his answer "that Margaret E. Wotring received from her people in Shenandoah county, Virginia, a large sum of money, part of which was used in the purchase of said house and lot." There is no evidence that Mrs. Wotring ever had a separate estate, except the answers and depositions of themselves. B. E. Wotring as a witness on examination in chief says as the agent of his wife he bought the property from Hickman, "paid three hundred and seventy-five dollars, of which two hundred dollars was paid with a pair of horses and harness, fifty dollars in money, forty some dollars in meat and a book account of our business and ninety-four dollars as well as I recollect paid by Mrs. Lipscomb," says the horses belonged to his wife, bought with her money; the horses had been bought and traded that is one of them for several years, the other one was bought of Henry Feathers by witness' son several years before, when his son was under age, the other was bought of Henry Mackwood by witness, didn't pay cash for it, couldn't tell how it was all paid, but remembered of trading a cow on the horse and admits giving his own note for the residue of the price of the horse. When asked to explain how the horse belonged to his wife when he had bought it and hadn't paid the money for it, and couldn't yet tell whether the horse was paid for or not, he said, "It was this, everything that we had, in one sense of the word, belonged to my wife, when we was married, I had no money, and she had between two thousand dollars and two thousand five hundred dollars." He further states, "the most of the business was carried on in my own name, a part in my wife's name. About ten years ago there was some money invested, fifty dollars, in a lot in the town of Bayard. Since that time I cannot tell just where, there was about three hundred dollars invested on said property that is, on the same property that the fifty dollars was invested in. All other real estate was in my own name, with the exceptions, on some land property in Frederick and Shenandoah counties, Virginia, the personal property was owned by me and part by my wife ever since we were married. It was always under my control to a certain extent. The madam would have her say sometimes. It was always assessed to me until recently. I have nothing now to assess." B. E. Wotring testifies that he was a butcher, and states that a part of the purchase money of said property "forty some dollars," was paid in meat and a book ac-

count, and further says, "the personal property was owned by me and part by my wife ever since we were married," and "all other real estate (other than the lot in Bayard) was in my own name, with the exceptions of some land property in Frederick and Shenandoah counties, Virginia." From the testimony of B. E. Wotring and the admissions in the answer of Margaret E. Wotring it is clear that he had control of and handled her money with his own indiscriminately, and there is no evidence when she let him have money that he ever gave her a receipt or note or anything whatever to show that he was to be liable or accountable to her for it, or any part of it. In *Trapnell* v. *Conklyn,* 37 W. Va. 242, at page 255, JUDGE BRANNON discussing the question says, "Where she allowed her separate estate to be indistinguishably mixed with the husband's property, hers is lost to her as separate estate, as regards his creditors," and cites Wells Mar. Wom. 119; 2 Bishop Mar. Wom. ss.' 88, 818, 820; *Glover* v. *Alcott,* 11 Mich. 470; *Glidden* v. *Taylor,* 16 O. St. 509. That A. E. Lipscomb, husband and agent of Mollie E. Lipscomb, knew of the claim of plaintiff and that plaintiff was going to proceed against the property is known by the evidence of O. McMillen, the brother of Mollie E. Lipscomb and brother in law of A. E. Lipscomb, that Lipscomb told witness he was about to trade with Uncle Ben Wotring for his property in Hulings. I said to him, "Al, you had better be careful, you know that Uncle Ben. Wotring is in pretty bad shape, and you may get into trouble over the property or about the property. This was before the deal was made for the property," and this is not denied, although Lipscomb's deposition is afterwards taken. And J. R. Collett, a carpenter, testifies that some time in the fall of 1897, he had a conversation with Mr. Lipscomb in regard to making some improvements on the property for them, and they both talked as though they would have an addition put to the building. They said if Mr. or Mrs. Wotring would pay for the improvements they would have the work done, and then some time after that Lipscomb told witness that there was a suit entered against the property, and they would not make any improvements, and said if Mrs. Wotring would pay for these improvements, they would go ahead with it anyhow. And Lipscomb stated to him that they had only paid a certain check on the property, but there is nothing binding about it. The check was given to Kennewig. Lipscomb showed him a contract be-

tween them and Wotring, remembers in the contract there was to be a certain amount paid to Kennewig and believes a small amount to Hickman, and he stated that there was an agreement between parties that if any necessary improvement was put on the house that they, Mrs. Wotring, would pay for it, that he understood Lipscomb to say that nothing was binding the property to them, and in speaking of the sale to them Lipscomb said there was nothing binding about it. Although Lipscomb's deposition was taken after Collett's, he does not deny nor even refer to this conversation. I conclude that Lipscomb not only knew the purpose that the parties had in having this property conveyed in the name of Mrs. Wotring, but that she, Lipscomb, took the conveyance with a private contract, and understanding between the Lipscombs and the Wotrings, in case the attack on the conveyance should be successful.

It is assigned as error that in decreeing the sale it did not provide for the payment to Mrs. Lipscomb the amount of the vendor's lien, with its interest paid by her to Kennewig. It is not disputed that Mrs. Lipscomb paid the ninety-four dollars to the attorney of C. F. Kennewig, the holder of the vendor's lien, and it is proved also, this sum of money was the first lien on the property. In *Schmertz* v. *Hammond*, 47 W. Va. 527, (35 S. E. 945), where the fraudulent purchaser had taken an assignment of an equitable lien on the purchase property which represented a part of the purchase money due from the vendor, although the deed was set aside as fraudulent, the purchaser was given his priority as holder by assignment of the vendor's lien. 2 Snyd. Ven. (8 Am. Ed.) 398; *Griffin* v. *Carmack*, 36 Ala. 695; *Griggsby* v. *Hain*, 25 Ala. 327; *McAlpin* v. *Burnett*, 19 Tex. 497; *Rakestraw* v. *Hamilton*, 14 Iowa 147; *Cummings* v. *Ogleby*, 50 Miss. 153; *Boies* v. *Benham*, 127 N. Y. 620, (28 N. E. 657); 14 L. R. A. 55; *Henderson* v. *Goode*, (C. C.) 49 Fed. Rep. 887; *Board* v. *Wilson*, 34 W. Va. 609 (12 S. E. 778); *Poe v. Paxtons Hs.*, 26 W. Va. 607; *James v. Burbridge*, 33 W. Va. 272, (10 S. E. 396). This assignment of error is well taken, and the court should have decreed the ninety-four dollars and its interest to be first paid to the defendant Mollie E. Lipscomb who holds the lien held by C. F. Kennewig. It is also claimed error in not sending this cause to a commissioner to ascertain the liens and their priorities on said real estate, and what, if anything, had ever been paid upon the judgment as-

signed to plaintiff by B. E. Wotring on A. D. W. Shaffer, which was to be a credit on the judgment sued on in this case. "In a suit brought to have a conveyance of land declared void as to creditors, and to subject the land to the payment of the debts of such creditors, it is not required by the statute or the general law on the subject that all the creditors of the fraudulent grantor or debtor should be conveyed and their debts reported, nor that it should be ascertained whether the rents would pay off the debts in five years before there can be a decree for the sale of such land." *Core* v. *Cunningham,* 27 W. Va. 206; *State* v. *Brown,* 38 W. Va. 91.

As to the plea of payment set up in the answer by the assignment of the judgment to plaintiff against A. D. W. Shaffer, defendant Wotring filed no answer until the cause was ready for hearing. Suit was brought in September, 1897, bill filed at October rules, defendant Wotring filed no answer until March, 1899, and although his deposition was taken twice in the cause, he never mentioned the assignment in his depositions. He undertook to prove the assignment of the judgment by Soloman Clark, a former justice of the peace, but his evidence is too indefinite and uncertain to prove anything, even if the deposition had been supported by proper pleadings. I have no doubt the answer was filed for the purpose only of further delay. If defendant had been armed with a *bona fide* defense of that character he would have made it in time to avail him.

The decree will be reversed in so far as it fails to decree the lien paid by Mollie E. Lipscomb to C. F. Kennewig to said Lipscomb as the first lien on the property, and in all other respects the decree is affirmed. The cause is remanded with instructions to amend the decree by decreeing in favor of the defendant, Mollie E. Lipscomb, the said ninety-four dollars and interest as the first lien on the property. The appellant Mollie E. Lipscomb being the party substantially prevailing, will recover her costs in this Court against the appellee.

*Reversed in part.*