# CHARLESTON.

JAMES v. BURBRIDGE.

*(GREEN, JUDGE, Absent.)

Submitted September 11, 1889—Decided November 20, 1889.

1. VENDOR'S LIEN—PARTIES.

A deed conveying land reserves a lien for purchase-money, not declaring in whose favor it is reserved. If the note or bond for the purchase-money is, at the time of the conveyance, executed by the purchaser payable to a third party, he has a right to the debt; and the right to enforce the lien ; and the grantor is not a necessary party, nor, after his death, his personal representative or heirs. And if the note or bond were originally payable to the grantor in the deed, but afterwards, with his assent, the purchaser takes up that note or bond, and, in place of it, executes one to such third party, this does not extinguish the lien, but the third party becomes entitled to the debt, and to the lien as its incident ; and, in a suit by him or his assignee to enforce it, the grantor, or, after his death, his heirs or personal representative, are not necessary parties.

2. VENDOR'S LIEN—SUBROGATION.

Where a purchaser of land, pursuant to his contract, pays a lien on the land, binding his vendor's estate in it, and such contract is abandoned by the parties, and the vendor becomes unable to execute it, though the purchaser took no assignment when he so paid the lien, yet he is entitled to be substituted to such lien, and equity keeps it alive for his indemnity.

3. VENDOR'S LIEN—SUBROGATION.

The purchaser, having so paid such bond, afterwards procures its owner, to whom he paid it, to assign it to him in writing, and then sues to enforce it against the land, setting up in his bill, and relying on, the assignment as his ground for relief, and praying a sale of the land, and for general relief. The answer and evidence show such payment without assignment, and the subsequent assignment. Under this bill he may, on the theory of subrogation, be decreed his debt.

4. VENDOR'S LIEN—SUBROGATION—RENTS AND PROFITS—PERMANENT IMPROVEMENTS.

While in such suit the purchaser shall have such relief, there must be charged against his debt rents and profits while he was in possession, abating therefrom permanent improvements made by him.

*On account of illness.

*J. V. Blair* for appellants.

*S. D. Turner* for appellee.

BRANNON, JUDGE:

A. A. James brought a chancery suit in the Circuit Court of Doddridge county, alleging in his bill that on April 18, 1874, Jonathan Parks and wife by deed conveyed to John P. Burbridge a tract of forty seven and one half acres of land at the price of $650.00, of which $175.00 was cash, $75.00 was payable in one year, and the residue in four equal yearly payments, for which deferred payments Burbridge executed writings obligatory, in the deed called "notes," to Samuel C. Parks, for the payment of which a lien was reserved in said deed; that since the execution of said deed, Jonathan Parks had died; that Samuel C. Parks had assigned one of the four notes of $100.00 each due February 16, 1878, to James, and that it remained unpaid; that he did not know whether any other notes had been paid; that O. B. Lawless and T. J. Snider were in possession, each, of a portion of said land; and praying a decree for payment of said $100.00 writing obligatory, and a sale of the land for its payment. Burbridge, Lawless, Snider, and Parks were made defendants.

Burbridge answered, averring that the writing obligatory sued on was not one or either of those described in the deed; and that plaintiff, James, by contract of sale made with Burbridge about April, 1876, went on about twenty acres of the land, and resided there three years or more, and by the contract James was to pay $100.00 of said purchase-money, and its interest, as part payment for the land and its use; and that the rents and profits for the three years amounted to more than the amount which James agreed to pay; and that, if the instrument on which he sued should turn out to be a part of the purchase-money, it had thus been paid to James. The answer also charged James with waste while he occupied the land to the extent of more than $100.00.

O. B. Lawless filed an answer, setting up that the bonds or note executed by Burbridge for the land had been originally made payable to Jonathan Parks, and, after the deed to Burbridge, a fear arising that they might be subjected to

Jonathan Park's debts, they were taken up, and notes executed by Burbridge, payable to his brother, Samuel C. Parks, who had no interest in the matter save to protect his brother. The answer for this reason denied that there was any lien for the writing obligatory sued on, and denied that it had been assigned to James, and that it had not been paid.

This answer alleged that Burbridge and one Lefevre conveyed, among other tracts, to Levin C. Lawless twenty acres of the forty seven and one half acres; that afterwards, about April, 1876, Levin C. Lawless authorized Burbridge to sell the twenty acres to James at $400.00, James to pay off and take up as the first payment that certain writing obligatory of $100.00 filed with James' bill, which, by the contract of sale between Burbridge and Lawless, the latter was to pay; that Burbridge, in April, 1876, sold the twenty acres to James at $400.00, and James was to pay said $100.00 writing obligatory filed with the bill as the first payment, the contract being rudely written, and signed by Burbridge and James; that James, under his purchase, on the next day entered on the twenty acres, and there resided for two and a half years, receiving rents and profits to an amount in excess of said $100.00 writing obligatory; that, pursuant to this contract, James, on August 26, 1876, paid off and took up said writing obligatory from Samuel C. Parks; that afterwards, while James was in possession, Levin C. Lawless died, leaving no children, but leaving a mother and collateral heirs; that one of the heirs brought a suit against the others to sell his lands and divide the proceeds among the heirs, including this tract of twenty acres, and in May, 1878, a decree for their sale was made, and on November 15, 1878, under the decree, this tract of twenty acres was sold, and purchased by O. C. Lawless, who was a brother and heir of Levin C., and its sale confirmed to him by decree in May, 1879, and conveyed to him in December, 1881; that James knew of the suit, and was present at the sale.

The answer also avers that after this purchase O. C. Lawless was willing and ready and offered to execute said contract of sale made by Burbridge to James, by conveying the twenty acres to James for the consideration he had agreed to pay, and take up the writing obligatory, but that James refused

to do so, and, after repeated offers to do so, he sold the twenty acres to Peter Gains, and conveyed it to him by deed of March 1, 1882, and Gains afterwards conveyed it to Davis; that when James took up from Samuel C. Parks the writing obligatory, it was not intended by either Parks or James that it should be an assignment of it to James, but it was, on August 25, 1876, turned over to James by Parks, as if paid by Burbridge or Lawless, and that the securing the indorsement thereon of the name of Parks some two years later was a trick of James to avoid his purchase. This answer denies plaintiff's right to relief, and pray that "the allegations herein contained may be considered, and relief accordingly granted the defendant."

Numerous depositions were taken. About two and one half years after his purchase, James abandoned the land. The decree declared that James had a lien on the land for the writing obligatory sued on, subject to a credit of $62.50 for use and occupation of the twenty acres by James, from which was deducted $40.00 for permanent improvements made by him, leaving $22.50 net as a credit against James' debt, and then decreed to James $150.68, and subjected the land to its payment, with interest and costs; and from this decree Burbridge and Lawless have appealed to this Court.

The first specification of complaint against the decree is that Jonathan Parks' personal representative and heirs are not parties. Plainly, the heirs were not necessary parties, as he had passed his title by deed in his lifetime, and nothing descended to them. Nor do we think his personal representative a necessary party. The theory of the appellants is that the lien was reserved to Jonathan Parks, he being the grantor, and no one being named as the person in whose favor the lien is reserved. That a lien can be reserved for purchase-money in favor of a third party by express provision of the deed has been decided. *Mize* v. *Barnes*, 78 Ky. 506; *Perkins* v. *Gibson*, 51 Miss. 699. Here a lien was reserved. The question is, who is entitled to enforce it? It seems clear that if this $100.00 of the purchase-money was, when the deed was made, owned by Samuel C. Parks, and the vendee, Burbridge, executed the note or bond for it to him, Samuel C. Parks became owner of that part of the debt

for which the lien existed, and Jonathan, from the very birth of the lien, had no right in it. By an act of his in having the note made to Samuel C., he parted with all right in it. On that theory, he would not be a necessary party. But, if the note or bond was originally made to him, and afterwards, as appellant claims, that note was canceled, and the bond on which this suit was brought was, with Jonathan Parks' assent, substituted for it, the effect of the transaction would be to transfer and assign to Samuel C. the debt, and leave no remnant of title in Jonathan. Viewed simply as an assignor, having under this form of transaction no interest remaining in him, he would not be a necessary party. *Scott* v. *Ludington*, 14 W. Va. 387; *Vance* v. *Evans*, 11 W. Va. 342. I can not see how in either view Jonathan Parks would have an interest in himself—a vestige of interest.

If we say this act of substitution of the new for the old bond was to defraud creditors of Jonathan, that fact can not change the case; for these creditors' rights are not here involved, and the substitution, as between Jonathan and Samuel C. Parks, would certainly vest title in the chose in the latter, and divest it out of the former. Then may it be said that, though thus Samuel C. Parks became owner of this bond, still, the lien was reserved to Jonathan, as no one is named in the deed as lienor? It is difficult to see how the lien could remain in one and the debt vest in the other; for, as assignment of the debt carries with it the lien, the lien is regarded as an incident of the debt for this purpose. *Tingle* v. *Fisher*, 20 W. Va. 497; *Gwathmeys* v. *Ragland*, 1 Rand. (Va.) 466; *McClintick* v. *Wise*, 25 Gratt. 448; *Grubbs* v. *Wysors*, 32 Gratt. 127; Jones, Liens, § 1119. The surrender of the original bond, and the taking of the new one from the same debtor, will not extinguish or impair the lien or debt. *Hess* v. *Dille*, 23 W. Va. 90; *Bank* v. *Good*, 21 W. Va. 455, 465; *Coles* v. *Withers*, 33 Gratt. 193.

Another alleged error is that the heirs of Levin C. Lawless were not parties. In October, 1876, one of his heirs brought suit against the others to sell this twenty acres and divide its proceeds among the heirs, and in May, 1878, a decree to sell it was pronounced, and it was sold to O. C. Lawless in November, 1878, and the sale confirmed in May, 1879,

and the land directed to be conveyed to him; and it was conveyed to him December 23, 1881. This suit was brought in September, 1879, and the decree of sale was July 20, 1878. Thus, before this suit began the sale had been made from Lawless' heirs, and when the decree was rendered the title was in O. C. Lawless, who was a party to the suit. No title was in the heirs, but in the court, and later in O. C. Lawless, during the pendency of this suit. The heirs of Levin C. Lawless were not necessary parties. The demurrer was general, and specified no want of parties, or their names. The demurrant can not complain, therefore, because of his demurrer being overruled, as it does not seem to this Court that they were at all necessary parties to a just decision. *Robinson* v. *Dix*, 18 W. Va. 529.

Next the appellant's counsel contends that when James took up the bond of Samuel C. Parks he simply paid it—took no assignment of it until long afterwards; and that he paid it in execution of his agreement of purchase from Burbridge, by which he was to pay it as a part payment of purchase-money due from him, and thus extinguish the lien. The sale between Burbridge and Lawless and James was abandoned after James so took up the note, and before its actual application on the purchase-money due from James to Lawless—abandoned by James, also by the Lawless side, as they brought suit to sell it for their benefit, and did sell it for their benefit. Though O. C. Lawless afterwards offered to carry out his contract, he did not do so as heir; for he had not derived the land as heir, and could not claim to enforce the original contract. But, be this as it may, James did not accept; and then O. C. Lawless conveyed it to another, James, and that other to still another, Davis. So he could not, when he filed his answer, ask affirmative relief by compelling James to take the land under his contract with Burbridge as agent for Levin C. Lawless, for it does not pray that specific relief, nor could it so pray; for the facts by itself disclosed, namely, these sales, putting it out of his power to convey to James the twenty acres, would preclude any such relief. So, then, the land is gone to others, and James has yet this bond. That it has not been paid by Burbridge or the land, outside of rents, is uncontrovertible. That fact stands out.

Then, what can a court of equity do, to do justice to all parties? I think that was attained by the process adopted by the Circuit Court. Pay James the bond he lifted, binding the land, though he did pay it, and did not take an assignment, and charge him rent for the land while he occupied it under the sale afterwards abandoned, less permanent improvements. If Parks yet owned this bond, the land would have to pay; and James, having paid a debt which was a valid lien, ought to be substituted to it. *McNeil* v. *Miller*, 29 W. Va. 480 (2 S. E. Rep. 335); *Moore* v. *Ligon*, 22 W. Va. 292; 3 Pom. Eq. Jur. § 1273. Though no assignment was in fact made when the note was lifted, the right of substitution existing, equity treats the case as though an assignment had been in fact made. *Gatewood* v. *Gatewood*, 75 Va. 407; Jones, Liens, § 993. If it be said that James was in fault in abandoning the contract, it is replied that the Lawless heirs did not sue him to enforce the contract, or notify him of their intention to so execute it, but at once acquiesced in such abandonment by bringing suit to sell it as their own, and did sell it. It is impossible now to execute the contract. To refuse James relief would be to impose, as it were, a forfeiture of a debt he paid binding the land. Of this debt all had notice. There is no other way now of doing justice than by affirming the decree.

As to the amounts charged against James for rents and profits, and credited him for improvements, they depend on varying estimates of different witnesses, and we could not undertake to say that the court below was wrong in this matter; for we think it properly credited these rents, less improvements, and any difference in amount between the sums fixed by the court below and what any one else might fix would be small, at most. *Smith* v. *Yoke*, 27 W. Va. 639; *Doonan* v. *Glynn*, 28 W. Va. 731. Though the plaintiff's bill bases his claim to relief on the assignment made to him long after he had paid and taken up the bond of Parks, and does not expressly rely on subrogation as a ground of relief, yet the answers and evidence show all the facts in connection with the bill, and under them, and the prayer of general relief, equity, looking at the substance, not mere formality,

will give relief, without requiring an amendment. *Salamone* v. *Keiley*, 80 Va. 86.

AFFIRMED.