# CHARLESTON.

SCHMERTZ *et al. v.* HAMMOND *el al.*

Submitted January 20, 1899—Decided March 24, 1900.

47   527
48   423

47 527,
s 51 408

1. WITNESS—*Evidence*—*Writing.*
    Where it appears that a witness testifying in a case has a written agreement with a party in whose behalf he is giving testimony, touching the subject-matter in controversy, the witness should be required to produce such writing, and, on his refusal to do so, his testimony should be excluded. (p. 543).

2. CONVEYANCE—*Trust Deed*—*Equitable-Lien.*
    V., by deed dated November 22, 1876, conveyed a tract of land to E. and A., the wives of B. and H., and, to secure a residue of the purchase money to V., at the same time E. and A., together with their husbands, made a deed of trust to R.,

trustee, the acknowledgment of which was wholly insufficient. *Held*, that although said trust deed conveyed no title from the wives to the trustee, yet the two deeds must be taken together, and an equitable lien is thereby created in favor. of V., which can only be enforced in a court of equity.   (pp. 543-544).

3.  EQUITABLE-LIEN—*Assignable.*

Such equitable lien is assignable, and may be enforced in a court of equity by the assignee.   (p. 547).

4.  TRUST-DEED—*Acknowledgment—Sale.*

A sale under such deed of trust by the trustee, after giving the statutory notice, is a nullity, and a deed executed by the trustee in pursuance of such sale conveys no title to the purchaser.   (p. 547).

Appeal from Circuit Court, Cabell County.

Suit by W. E. Schmertz and others against James Hammond and others.   Decree for plaintiffs, and defendants, Samuel C. Koonce and others, appeal.

*Reversed.*

CHARLES KOONCE, Jr., and W. P. HUBBARD, for appellants.

SIMMS & ENSLOW, for appellee.

McWHORTER, PRESIDENT:

A. M. Black and James Hammond, brothers-in-law, one living in Illinois, the other in Ohio, about the year 1875 removed to Wayne County, West Virginia.   They purchased five hundred acres of land near Cassville, in said county, and two lots in Cassville, from S. S. Vinson, for which farm and lots they were to pay sixteen thousand dollars, and took title bond from Vinson for same; and, having paid said Vinson something over one-half the price of said property, on the 22d day of November, 1876, they asked Vinson to convey the property to their wives, Elizabeth R. Black and Amanda Hammond, and to take from them a deed of trust on the land of the same date, to secure the payment of the purchase money still remaining unpaid. The conveyance to the women and the deed of trust were accordingly executed on the said 22d day of November, 1876, the deed of trust being executed by the said women and their husbands, and both deeds were duly recorded. Soon after going to Wayne County, the said A. M. Black and James Hammond, as partners under the firm name of

Black & Hammond, went into business as retail merchants in Cassville, and as such became indebted to the amount of several thousands of dollars. In 1877 suits were brought against them, and in July, October, and December of that year, and in August, 1878, judgments were rendered for various amounts against them. On the 4th day of March, 1878, George F. Ratliff, the trustee named in the trust deed from the Blacks and Hammonds to Vinson, conveyed to Samuel C. Koonce the said three tracts of land, near Cassville, he having become the purchaser thereof at a sale made by said trustee under said deed of trust, at the price of nine thousand one hundred and nine dollars and thirty cents; and on the 13th day of September, 1878, in consideration of ten thousand dollars, said Samuel C. Koonce and Amanda E. Koonce, his wife, conveyed the same to Charles Koonce, of Mercer County, Pennsylvania, which deeds were duly recorded in the clerk's office of the county court of Wayne County in the same months in which they were respectively made and executed. On the 25th day of December, 1882, W. E. Schmertz & Co., Ott, Hall & Co., Evans & Grimes, J. Klee & Co., J. C. Hopple & Co., Mack, Stadler & Co., A. Bradley & Co., and Duncan, Ford & Elder sued out of the clerk's office of the circuit court of Wayne County their subpeona in chancery, and filed their bill against A. M. Black, James Hammond, Elizabeth R. Black, Amanda Hammond, S. S. Vinson, Samuel C. Koonce, G. F. Ratliff, trustee, and A. M. Black, James Hammond, J. G. Lacy, and B. W. Lacy, late partners as James Hammond & Co., W. H. Koonce, and the unknown heirs of Charles Koonce, deceased, setting up their several judgments recovered against the firms of Black & Hammond and J. Hammond & Co., alleging that all of said judgments, and each of them, remained unpaid and unsatisfied, in whole and in part; that none of said judgment defendants had any personal property in this State out of which the same could be made or satisfied, and had not had since said judgments were recovered, and that each of them were liens upon the lands thereinafter mentioned; that the judgment defendants, in the years 1875, 1876 1877, and 1878, were merchants doing business in Wayne County, and in the course of their business contracted the

debts for which said judgments were obtained, and that during the continuance of said business in those years, and especially in the year 1875, and the early part of the year 1876, said defendant firms were largely indebted to various parties, among whom were complainants, and while that indebtedness existed the said Black and Hammond, both members of the defendant firms, for the purpose of hindering, delaying, and defrauding their creditors, among whom were complainants, purchased from S. S. Vinson, for the sum of sixteen thousand dollars by them paid, three tracts of very valuable and improved lands in said county, situate about one mile below the forks of Sandy river, containing five hundred acres, and two valuable lots in the town of Cassville, and had the legal title of the same conveyed to their said wives, Elizabeth R. Black and Amanda Hammond, by the said Vinson and wife, by deed dated November 22, 1876, a copy of which was exhibited with the bill; that all the money and funds used in payment for said lands to said Vinson belonged to said A. M. Black and J. Hammond, and not one dollar of the money so paid belonged to the said Elizabeth R. Black or Amanda Hammond; that the said Elizabeth and Amanda knew of said indebtedness of their said husbands, and that they had procured the said title to be made by said Vinson and wife to them, their said wives, to hinder, delay, and defraud their said creditors in the collection of their said debts; that, after the conveyance of the lands to Elizabeth and Amanda, they undertook and attempted to convey the same by a pretended deed of trust to George F. Ratliff, trustee, to secure the payment to S. S. Vinson of two promissory notes, one for one thousand five hundred and sixty dollars, the other for six thousand seven hundred and twenty-four dollars and eighteen cents, and the interest thereon, and exhibited a copy of said trust deed; that said pretended deed of trust to Ratliff was never executed and acknowledged by the said married women, Elizabeth and Amanda, as required by law, and that the same was null and void, and that the legal title was still in the said married women; that, some time after the pretended execution of said trust deed, the said A. M. Black and J. Hammond, with their own money or means, paid off said ·

notes to said Vinson, and that a few days after said pay-
ment they went back to said Vinson, either in person or
by their agent or attorney, M. J. Ferguson, Esq., and had
the said Vinson assign the said notes, without any re-
course whatever, to Samuel C. Koonce, the son-in-law of A.
M. Black, and the nephew of said J. Hammond, and said
Koonce took said assigned notes which had been paid by
said Black & Hammond, or with their means, and had said
Ratliff, trustee, to advertise and sell said three tracts of
land under said pretended trust deed, and at the pre-
tended sale said Koonce became the purchaser for the
amount of said notes, and said trustee, by deed of date
March 4, 1878, attempted to convey the said three tracts·
to Koonce, and exhibited a copy of the deed to Koonce;
that said Koonce knowingly took said assigned notes,
which had been paid and requested and caused said sale
under said pretended trust deed, and bought said lands at
said sale, all for the purpose and with intent of aiding and
assisting the said A. M. Black and J. Hammond to hinder,
delay, and defraud their creditors; that for the said as-
signed notes, or for the said pretended purchase of said
lands, the said Koonce paid nothing out of his own moneys
or means, but the moneys used in both transactions be-
longed to the said A. M. Black and the said J. Hammond;
that said Samuel C. Koonce, without any valuable consider-
ation, attempted, by a pretended deed bearing date Sep-
tember 30, 1878, to convey said tracts of land to his father,
Charles Koonce, since deceased, and exhibited a copy of
the deed; that·said Charles Koonce was informed of and
knew the fraudulent purpose for which said·deed was
made to him, to aid in hindering, delaying, and defrauding
the said creditors in the collection of their claims against
said Black & Hammond; that the Blacks and Hammonds
retained possession and control of said tracts of land after
said pretended purchase, under the trust deed by Koonce,
and still held possession and control, and used it as their
own, without paying any rents; that said purchase of said
lands and lots by said Black and Hammond in the names
of their wives, and taking the legal title in their wives, and
the pretended trust deed and pretended assignment of
said notes, and pretended sale and purchase of said lands

under said trust deed, and the pretended conveyance to Charles Koonce, did hinder, delay, and defraud the said creditors in the collection of their debts, and that all the acts and doings of the said A. M. Black and his wife and of J. Hammond and his wife and the said Koonce, in all the said transactions, shifts, and devices, were knowingly done by them for the purpose of hindering, delaying, and defrauding plaintiffs in the collection of their claims, and they did so hinder, delay, and defraud them; that plaintiffs never discovered the frauds in the transactions aforesaid until the summer of 1882; and prayed that the deed from Vinson and wife to Elizabeth R. Black and Amanda Hammond should be declared fraudulent, null and void as to plaintiffs' claims; that the deed of trust to said Ratliff be declared null and void; that the deed from Ratliff to S. C. Koonce, and the deed of the latter to his father, Charles Koonce, be set aside, and declared null and void, and that said judgments, and each of them, be declared existing liens upon the tracts of land and two lots; that said lands and lots be sold to satisfy same; and for general relief.

Defendant Samuel C. Koonce filed his answer, filing with it a copy of the last will and testament of his father, Charles Koonce, whereby respondent William H. Koonce and George W. Philips were appointed executors thereof; said he had no personal knowledge of the recovery of the judgments set up in the bill, nor whether they had been paid in whole or in part, and had no knowledge nor information, and could state nothing, as to the personal property, or its value, owned or claimed by the defendants in said judgments, or either of them, at the time mentioned in the bill, or at any other time, but denied, on information and belief, that said judgments, or either of them, were liens on the real estate, or any part of it, mentioned in the bill and in question in this suit; that he was not informed and could not state what business the judgment defendants, or either of them, were engaged in, in either of the years 1875, 1876, 1877, 1878, nor when the debts for which the judgments were rendered were contracted, nor as to the extent of the indebtedness of the said defendants or either

of them, at the dates mentioned in the bill; admitted the purchase by Black & Hammond of the property for sixteen thousand dollars, but did not know the date thereof, nor the purpose and intent of Black & Hammond in making such purchases, whether for the purpose of hindering, delaying, and defrauding their creditors, including the plaintiffs, or otherwise, and, if they purchased with such intention as charged in the bill, denied that he ever had any knowledge or information of any such purpose or intent on the part of either of them; admitted that said Black & Hammond caused a deed for said real estate to be made by said Vinson and wife, purporting to convey the title to said real estate to Elizabeth R. Black, the wife of A. M. Black, and Amanda Hammond, the wife of James Hammond, bearing date November 22, 1876, a copy of which is filed with the bill, and referred to it as part of his answer, but, on information and belief, denied that the legal title to said real estate, purporting to be thereby conveyed, thereby vested in said grantees, or either of them, in said deed, under and by virtue thereof, for the reasons stated in the next paragraph of the answer, as follows: "(8) This defendant here avers, answers, and says that on the said 22d day of November, 1876, when the deed mentioned above was executed by the said S. S. Vinson and wife, the said Vinson held a valid and subsisting lien on the said real estate for the payment of the purchase money thereof remaining unpaid to him by the said Black & Hammond, amounting to the sum of eight thousand, two hundred and eighty-four dollars and forty-eight cents, and, for the purpose of continuing and preserving the said lien of said Vinson on said real estate in full force and effect as long as the said balance of purchase money remained unpaid, the said A. M. Black and Elizabeth R., his wife, and James Hammond and Amanda, his wife, at the same time and place of the execution by the said Vinson and wife of the deed aforesaid, and before the delivery thereof, and as a part and parcel of one and the same transaction, executed to the defendant, George Ratliff, trustee, a deed of trust, whereby they conveyed to said trustee the same real estate mentioned, described, and conveyed by the deed aforesaid of said Vinson and wife,

for the purpose of preserving and continuing in force the said lien of said Vinson on said real estate, and thereby securing the payment of the said sum (eight thousand, two hundred and eighty-four dollars and forty-eight cents), with the interest thereon, to the said Vinson, when the same becomes due and payable, as provided in said deed of trust; and this defendant further avers, answers, and says, that the said deed of said Vinson and wife, and the said deed of trust, were executed, acknowledged, and delivered simultaneously with each other, and as part and parcel of one and the same transaction, as hereinbefore stated, for the uses and purposes stated in said deed of trust; and this defendant, therefore, denies that the said deed of trust is null and void for the reason alleged in said bill, or for any other reason, but, on the contrary thereof, he is advised and believes, and so avers, that the said deed of trust was at the date of its execution, and still is, a valid and binding deed, for the uses and purposes herein mentioned, and he also denies that the legal title of said lands is in the said Elizabeth R. Black, and Amanda Hammond, or either of them, as alleged in said bill." Respondent denies each and every allegation of the bill that the defendants Black and Hammond, or either of them, with their own money or means, paid the whole of the sixteen thousand dollars purchase money of said real estate, or that they, or either of them, paid off to said Vinson the notes mentioned in the trust deed; admits the assignment of the notes, but denies that they had been paid off, in whole or in part, by any person whatever; admits that he was at the time of the assignment, and is yet, the son-in-law of A. M. Black, and that his wife is the neice of said Amanda Hammond; that he caused the real estate to be sold by the trustee; that he became the purchaser, but not for the amount of said notes, as alleged, and that said real estate was conveyed to him by the trustee by deed dated the 4th of March, 1878, but positively denies each and every allegation of the bill that in any way charges that he knowingly took said assigned notes which had been paid off, as charged and requested, and caused said sale under said pretended trust deed, and bought said lands at said sale, all for the purpose and with the intent of aiding and as-

sisting the said A. M. Black and J. Hammond to hinder, delay, and defraud their creditors; that, on the contrary, all those things were done by him in good faith, and without any knowledge or information of any such purpose or intent on the part of said Black & Hammond, or either of them, as to hinder, delay, and defraud their creditors mentioned in the bill, or any other creditors they may have had, and without any purpose or intent on his part to aid the said Black & Hammond, or either of them, in hindering, delaying, or defrauding their creditors, or any of them, mentioned in the bill, or any other creditors they or either of them may have had; and avers that said notes, and each of them, mentioned in the deed of trust, as well as the deed of trust, were each and all of them in full force and effect, and the notes, and each of them, were wholly unpaid, at the date of the assignment thereof to him; avers that he resides in Mercer County Pennsylvania, several hundred miles from Wayne County, West Virginia, and never was in Wayne County, excepting the year before Black & Hammond moved there, until November, 1877, when he and his wife visited A. M. Black at his residence on the real estate purchased from Vinson, and while there learned of the purchase by Black & Hammond and the execution of the notes and deed of trust, and that Vinson was intending to cause the sale under the deed of trust, and while there respondent's wife handed him five thousand, five hundred dollars, without saying from whom she received it, and directed him to pay it to Vinson on the debt mentioned in the deed of trust, which he did, and at the same time promised said Vinson to pay him the balance of said debt within sixty days from that date; that before that time expired the property was advertised for sale under the trust deed for the balance due Vinson; that, Black & Hammond not being able to raise the money to pay the same, respondent, at Black's request, borrowed the sum necessary from his father, Charles Koonce, and paid said debt in full to Vinson, and for indemnity took the assignment of said notes and deed of trust, and filed the assignment with his answer. Respondent admits the five thousand, five hundred dollars received from his wife was the money of A. M. Black, and from his previous knowledge of

the very small business capacity of said Black & Hammond, and their reckless ventures at speculation, before their removal to Wayne County, he determined to have said real estate sold under the trust deed, and to purchase the same, and take the deed in his own name, and hold it as his own property, and accordingly did purchase it at nine thousand, one hundred and nine dollars and thirty cents, and the same was conveyed to him. Respondent denies that he paid nothing out of his own moneys or means, but used the moneys and means in both transactions of A. M. Black and J. Hammond, and that the land was conveyed by him to Charles Koonce without any consideration, and that said Charles Koonce was informed of and knew the fraudulent purpose for which said deed of September 30, 1878, was made to him, to aid in hindering, delaying, and defrauding creditors in the collection of their claims against Black & Hammond, and avers that such allegations relating to his dead father, Charles Koonce, are a wanton and inexcusable slander upon his memory; avers that these denials are made on his own knowledge of the several transactions and matters to which they relate, and of his own knowledge avers that the sale under the trust deed, his purchase of the real estate thereunder, and the conveyance to him, and his sale and conveyance thereof to Charles Koonce, his father, were all made and done in good faith, for valuable consideration, and without any fraud or intended fraud on the part of any of the parties thereto; that, at the time he agreed to pay Vinson the balance of the debt of Black & Hammond, he was ignorant of his indebtedness to others than said Vinson, and a debt of said Black to Charles Koonce and himself, and after the sale was advertised at which he purchased, and before the sale was made, one T. C. Grove, a creditor of Black & Hammond, enjoined the sale in the United States district court, claiming an indebtedness of three thousand, three hundred dollars; Black & Hammond admitted the justness of the debt to Grove, and authorized respondent to compromise and pay it, which he did, for the sum of two thousand, three hundred dollars, in full satisfaction, and refers to depositions proving the same as part of his answer, and by agreement with Black the said two thousand, three hundred

dollars was credited on the five thousand, five hundred respondent received from his wife and paid to Vinson; the balance of the five thousand, five hundred dollars was, by agreement with Black, repaid to him and others, by his orders, as shown in Exhibit D, with said answer; avers that he borrowed from his father the said two thousand, three hundred dollars, which he paid to Grove, which sum, together with previous indebtedness to his father, made his whole indebtedness to him something over ten thousand dollars, and, being unable to pay him in money, he sold and conveyed the real estate to him for ten thousand dollars, in payment of his indebtedness to him to that extent; and avers that at the time he paid said money to Vinson and to Grove, and at the time he paid the balance of the five thousand, five hundred dollars, he had no sort of knowledge or information of the alleged indebtedness of said Black & Hammond to plaintiffs, or any of them, mentioned in the bill; admits that Black & Hammond remained in possession of the real estate after the sale, but denies that they, or either of them, retained control of it, or that said Black, or any of his family, were in possession at the time of his answer, but had long since abandoned the possession and removed from it; that after the sale and conveyance to respondent, and in consideration of the relationship existing between said Blacks and Hammonds and respondent and his wife, he permitted them to remain in possession of said real estate as his tenants, without payment of rent, beyond paying the taxes, which they paid until his sale and conveyance to his father, after which last conveyance his father, at his request, permitted the Blacks and Hammonds to remain in possession to the time of his death, in 1880, without paying rent or other consideration, except the payment of taxes, and after his death they still remained in possession as before until the fall of 1883, when, by direction of W. H. Koonce and George W. Philips, two of the executors, notice was given them that they must pay rent or remove, and respondent caused the lease to be prepared in the name of all the executors, leasing said real estate to Elizabeth R. Black and Amanda Hammond for a term of two years from and after March 1, 1884, at a rent of five hundred dollars per year, which the

said two executors refused to sign, but agreed that respondent might give said lease to the lessees named, if he would be responsible for the payment of the rent mentioned. Upon the 18th day of December, 1883, said lease was executed, and respondent, together with James A. Black and Charles A. Hammond, by writing indorsed on said lease and signed by them, agreed to pay the rent, in case the lessees failed to pay, and, by another indorsement on said lease, the adult heirs and devisees of Charles Koonce approved said lease, and, the lessees failing to pay the rent in whole or in part, respondent was charged by the other executors on the books of the estate with the sum of one thousand dollars, as shown by the deposition of W. H. Koonce. This suit in the meantime having been commenced, and the taxes having been regularly collected from the tenants, and would continue to be so collected, the executors were advised by their attorneys to defer legal proceedings to eject them until the determination of this suit. Respondent denies that plaintiffs never discovered the frauds in the transactions aforesaid until the summer of 1882, and denies that there was any fraud to be discovered in any of the transactions referred to in their allegations, committed or intended by this defendant or his father, Charles Koonce, or by any person or persons in any way connected with them or either of them, unless it was by A. M. Black, Elizabeth R. Black, James Hammond, and Amanda Hammond, and, if they or either of them committed or intended to commit any of the frauds in any of the transactions mentioned, the respondent never had, and has not now, any knowledge in regard to it, and avers that by their own showing plaintiffs had the means of knowing, and they did know, as much in regard to the alleged frauds, if any, committed by said Black & Hammond and their wives, in the year 1876, as they did in 1882, when this suit was brought, which was more than five years after the recordation of said deed from Vinson and wife to the wives of said Black & Hammond, and that plaintiffs stood by all these years, and permitted the sale of said real estate under said deed of trust, and purchase thereof by respondent, and the conveyance thereof to him by deed of the 4th of March, 1878, and permitted respond-

ent to pay the debt of Black & Hammond to said Grove, and to pay back the balance of the said five thousand, five hundred dollars to said Black and to sell and convey the said real estate to his father, Charles Koonce, which deed to his father was recorded the 25th of September, 1878, and never in any way set up any claim against the said real estate, or made any objection against the validity and good faith of any of said transactions, until more than two years after the death of said Charles Koonce and avers that the said plaintiffs, and each of them, have been guilty of such laches in the prosecution of their said claims as, under the facts and circumstances of this case, is a bar in equity to the relief or any part thereof, prayed for in their said bill.

The defendants, William H. Koonce and George W. Philips, executors of Charles Koonce, deceased, Samuel C. Koonce, as trustee of said William H. Koonce, under the will of Charles, Sarah McKenney, late Sarah Wilson, and Rachel Philips, Lilly Bartholomew, Clyde Bartholomew, Hayward Bartholomew, Ethel Bartholomew, W. W. Zimmerman, H. A. Zimmerman, Charles Koonce, and Mary Koonce filed their joint and several answer, saying that they have no personal knowlege of the business in which the defendants in the judgments alleged in the bill were engaged, admit the recovery and recordation of the judgments, but, on information and belief, deny they are liens on the real estate in question.

The defendant, Samuel C. Koonce, trustee of William H. Koonce, for a separate answer to said bill, refers to his answer as executor and in his own right, and asks that it be made a part of this answer. And the other defendants admit that Charles Koonce died seised and possessed in fee of the real estate in question in this suit, and this is all they know in relation to the said real estate; they know nothing of the purchase by defendants Black & Hammond, or the object for which they purchased, or the object and purpose for which they caused said lands to be conveyed by Vinson and wife to their wives, nor of the dealings of said Black & Hammond, or either of them, with Vinson, either in person or through their attorney, M. J. Ferguson, or of the dealings of said Samuel C. Koonce with said

Black & Hammond, or either of them, in relation to said
ands, nor of the transactions preceding, mentioned in said
bill, whereby Samuel became the purchaser and grantee,
or the dealings between Samuel and his father, Charles,
whereby said Charles became the owner in fee of said
lands, and therefore they neither admit nor deny the said
allegations of the bill, but demand full proof of said allega-
tions, and each of them, and refer to the answer of Samuel
C. Koonce as a full and complete answer and explanation
of all said matters and things charged in the bill, and ask
that said answer be read and considered as part of theirs.

The cause came on to be heard at the July term, 1897,
and it was held by the court that the deed executed by the
wives of defendants Black & Hammond to Ratliff, trustee,
was defective, and passed no title to him; that the legal
title to the farm below the town of Cassville, in Wayne
County, set out in plaintiffs' bill, is still vested in Amanda
Hammond and Elizabeth Black; that they hold the same
subject to the rights of the creditors of Black & Ham-
mond and J. Hammond & Co.; and that the purchase money
for said farm was paid by said Black & Hammond; and
that the conveyance of said land procured to be made by
the said Black & Hammond to their wives, Amanda Ham-
mond and Elizabeth Black, was made with the intent to
hinder, delay, and defraud the creditors; and tnat the acts
of said Samuel C. Koonce, in discharging, or attempting
to discharge and pay off, the trust-deed liens, and the tak-
ing of a conveyance of the farm below Cassville bought of
S. S. Vinson, to himself, through the trustee, Ratliff, were
all made with intent to hinder, delay, and defraud the
creditors of said Black & Hammond; and that the convey-
ance to Samuel C. Koonce of the farm below Cassville from
George F. Ratliff, and the deed from Samuel C. Koonce to
his father, Charles Koonce, were made with the full know-
ledge of the said S. C. Koonce of all the facts, and with
the intent to hinder, delay, and defraud the creditors of
said Black & Hammond and J. Hammond & Co.; and that a
deed was executed to Charles Koonce by Samuel C.
Koonce, who was acting as agent for his father, Charles
Koonce, and that the same conveyed no title to the said
Charles Koonce as against the plaintiffs' claim; and it was

decreed that said conveyance dated the 22 day of November, 1876, by Vinson and his wife, and the trust deed of the same date to George F. Ratliff, and the deed of March 4, 1878, from Ratliff to Samuel C. Koonce, and the deed of September 30, 1878, of S. C. Koonce to Charles Koonce, were fraudulent, null and void, and as such were set aside so far as affected the rights of the judgment creditors, and the land was decreed to be sold; from which decree Samuel C. Koonce, William H. Koonce,. and George W. Philips, executors of the last will and testament of Charles Koonce, deceased, and Samuel C. Koonce, in his own right and as trustee for William H. Koonce, appealed to this Court.

It is assigned as error that the court refused to compel the witness Amanda Hammond to produce a written agreement between the plaintiffs and herself, in pursuance of which she was testifying as a witness for the plaintiffs in the cause. In her testimony on cross-examination, Mrs. Hammond admitted that there was a written agreement between the creditors suing in this case and herself but refused to produce it or disclose its contents, stating that she had signed it herself, but refused to say who had signed it on behalf of the creditors, and that such refusal was under advice of her counsel. Notice was then given by appellants' counsel that he would move the court to compel the production of the agreement, and move to reject her testimony, unless it should be produced. Witness, Charles Hammond, son of said Amanda Hammond, was asked, on cross-examination, whether he knew of any arrangement between him and his mother, or either of them, or any of his family, and the plaintiffs or their attorneys, as to what disposition was to be made of the property in case the plaintiffs in this cause should recover. He replied, "Well, mother has assigned her interest away there in the place. Q. Who to? A. To settle her claim with the creditors. I believe she has settled her interest with them." He says the contract was in writing, that he read it, but when asked, "How did it read?" on objection by Mrs. Hammond, by counsel, he declined to answer. M. J. Ferguson, attorney for defendants, filed his affidavit (which affidavit is not copied into the record, but, by consent, the orginal may be read in the Appellate Court) to

the effect that Amanda Hammond, James Hammond (the latter since deceased), and Charles Hammond had testified in the cause. Said Amanda and her son, Charles, had lately given their testimony the second time for the plaintiffs, when, on cross examination, he called on both of said witnesses to state the contents of said agreement, and both, under the advice of counsel for Mrs. Hammond, refused to do so, and demanded the production by said Amanda of said agreement, and moved the court to require its production before the court, before the decision of this case, so that it could be made a part of the record, which the court refused to do. That affiant had learned from a gentleman acquainted with the contents of the agreement (as he 1 epresented to affiant, and of the truth of which representation affiant had no doubt) that (according to such representation of the contents of said paper) it was, in substance, an agreement on the part of the Hammonds to testify in this case as witnesses for the plaintiffs, and in consideration of the said agreement the plaintiffs, in case they should recover a judgment and decree in this case, were to convey a part of the lands in controversy to Mrs. Hammond, and that said corrupt agreement was of such a character that the production and entry as part of the record in the case would tend very greatly, and probably entirely, to destroy the credibility of all the Hammonds who signed it as parties to it in this cause, and aid very materially the defense of the defendants, for whom affiant appeared as counsel. The court ordered the affidavit to be filed as a proper paper to be filed in the cause, but, being of the opinion that the contract between the defendants Amanda Hammond and Charles Hammond should not be required to be filed over the objections of defendants Charles Hammond and Amanda Hammond, refused to require it to be filed. It is very evident that the witness Amanda Hammond was testifying in pursuance of a corrupt agreement between herself and the creditors or some of them. Section 644, Chamberlayne's Best, Ev., gives it as one way of discrediting an adversary's witness "by proving misconduct connected with the proceedings, or other circumstances showing that he does not stand indifferent between the conflicting parties. Thus, it may be proved

that a witness has been bribed to give his evidence." The existing relations of the witness with the adverse party may be shown on cross-examination. 1 Greenl. Ev. section 450. The plaintiffs consented that the contract or agreement might be filed, but it was refused, on the objection of Amanda Hammond and Charles Hammond. The court should have required the production of the agreement, and, on refusal to produce it, the evidence of Amanda Hammond should have been excluded.

The second assignment is that "the court erred in holding and decreeing that each and every of the deeds mentioned in the bill was inoperative, fraudulent, null, and void, and made with intent and for the purpose of hindering, delaying, and defrauding the plaintiffs in the collection of their said debts," and this involves also the third and fourth assignments, which are as follows: "(3) The court erred in holding and decreeing that no title vested in the trustee in said deed of trust by reason of the said defective acknowlegment thereof by the said married women, who, at the time of the execution and acknowledgment thereof by themselves and their said husbands, who were the equitable owners of said lands, to the extent of the payment of the purchase thereof paid by them, up to that time, and the said married women not being vested even with the dry legal title to said lands and lots at the time of the execution and acknowledgment of said deed of trust. (4) The court erred in holding that no title passed to your petitioner, Samuel C. Koonce, to the real estate in question, because of the said defect in said acknowledgment of said deed of trust, for the reasons stated in the third assignment of error." It is insisted by appellees that the trust deed made by Mrs. Black and Mrs. Hammond and their husbands to secure Vinson in the payment of the residue of the purchase money, because of defect in acknowledgment, was utterly void and of no effect; while it is contended by appellants that, taken together with the deed from Vinson to the women, it was made effective to convey their title, notwithstanding the defective acknowledgment; that the execution of the two deeds constituted one and the same transaction, and must be taken as one; that the women had put no money into the property,

and had no interest in it, and only received the "dry legal title." Appellants cite *Gilliam* v. *Moore*, 4 Leigh 30, which is a case where A. conveyed a parcel of land to B., and B., by deed of same date, conveyed the same to a trustee to secure the purchase money thereof to A. It was held that the two conveyances should be considered parts of the same transaction, and the seisin of B. was instantaneous and transitory, so that B.'s widow was not entitled to dower in the land. The deed from B. to the trustee in that case was sufficient to and did convey the title. So, in the other cases cited by appellants (*White* v. *Brocaw*, 14 Ohio St. 339; *Holmes* v. *Winkler* (C. C.) 47 Fed. 257); in which latter case it is held: "A conveyance of title to real estate, and a mortgage to the vendor for part of the purchase money, delivered simultaneously, constituted but one transaction, and the title of the vendee is from its inception incumbranced by the mortgage." Also *Balfour* v. *Parkinson*, (C. C.) 84 Fed. 855. The deed from Vinson to the women was an absolute conveyance, with general warranty, the original consideration being sixteen thousand dollars, with over one-half of the purchase money paid, whereby much more than the dry legal title was vested in them. As between the parties (Vinson and the Blacks and Hammonds), they had the whole title, legal and equitable. subject only to the balance of the purchase money to Vinson. The deed of trust being made simultaneously with the deed to the women from Vinson, and being intended to secure the residue of the purchase money due to Vinson, would be held to be in equity a part of same transaction, and an equitable lien for the purchase money, because the parties intended to create a lien; but such lien could only be enforced in a court of equity. The deed having been made to them in good faith, and they in like good faith having attempted to convey the land in trust to secure the residue of the purchase money, a court of equity would enforce a lien. The women would not be permitted to hold and enjoy the property, and not pay the consideration. "A vendor's lien is founded upon the equitable proposition that he who has gotten the estate of another ought not to retain it without paying the full consideration therefor." 2 Warv. Vend. p. 694, § 2; *Id.* p. 704,

§ 11; *Wood* v. *Wheeler*, 106 N. C. 512, (11 S. E. 590). While the deed from Vinson to the women was good as between the parties and conveyed to them the legal and equitable title, and they could only be devested of the title by a conveyance on their part properly acknowledged and recorded, or by the enforcement in a court of equity of the equitable lien of said Vinson as set out in said deed of trust, yet the same was made in fraud of the rights of the creditors of Black & Hammond, among whom were the plaintiffs. As to the object and purpose of the conveyance to the women, there can be no question. In the fall of 1877, A. M. Black paid to Vinson seven thousand dollars in cash on account of said trust debt, and took Vinson's receipt therefor; but his (Black's) counsel learning of the fact, expressed his dissatisfaction with the payment, and within a very short time on the same day caused the money to be returned, and Vinson's receipt therefor returned to him. This would be a simple payment on account of the deed of trust, and was not in harmony with the scheme that was being worked under the advice of their counsel. It seems that in some way they had misapprehended their advice, and, instead of arranging with some outside party to buy the residue of the trust debt with the debtor's money, they had paid it directly on account of the debt, which they had a right and which it was their duty to do. At this most opportune time, while the trust debtors still had the money with which they could have paid the greater part of the debt then remaining due and unpaid, S. C. Koonce, the son-in-law of the one and nephew of the other of the debtors, together with his wife, appeared on the scene,—happened there on a visit,—and within two days after their arrival Mrs. Koonce handed her husband the sum of five thousand five hundred dollars in money, with the request that he pay it to Vinson on the trust deed. And on the 8th of November, 1877, Mr. Vinson says, in a few days after Black had paid and taken back the seven thousand dollars, "Sam Koonce came and asked me if he would pay off the deed of trust if I would sign it over to him. I told him I would. Sam Koonce came and paid me,—I am sure the same five thousand dollars, and an extra five hundred dollar bill; then gave me a draft on his father for the remainder, and I

signed over the deed of trust to him.'' The amount paid by Koonce, in addition to the five thousand five hundred dollars, was three thousand two hundred and fifty-four dollars and nineteen cents. This sum of five thousand five hundred dollars is admitted by appellant to be the money of A. M. Black. S. C. Koonce says he advised with M. J. Ferguson, who was the counsel of Black & Hammond, in every step he took in relation to that transaction; that he had confidence in Mr. Ferguson, who said "that I ought to buy that land in, and secure a home for Mrs. Black and Mrs. Hammond.'' Although Mr. Koonce claims to have known nothing about the business or financial condition of Black & Hammond, he is advised by their counsel to buy in the property to secure a home for their wives, his mother-in-law and aunt, and takes and uses a large sum of their money in the execution of that purpose, and is met when he undertakes to have a sale under the trust deed, by an injunction by one of the large creditors of Black & Hammond, which debt he compromised that the sale might proceed, and then claims to have returned to Black the money used by him in purchasing the trust debt. Is it at all probable that the son-in-law, an active business man, visiting his wife's people, finding them in business, owning valuable property partially paid for, and being advised by their counsel to buy in the property,—the farm,—so as to secure a home for his mother-in-law and aunt, would know nothing of their financial circumstances, as is claimed by Mr. Koonce? To me nothing could be more unlikely. Although Trustee Ratliff conveyed the land to S. C. Koonce by deed dated on the 4th day of March, 1878, Vinson's vendees were left in possession of it for several years thereafter, and until a year after the institution of this suit, December 18, 1883, when they were induced to take a lease for said land from the executors of Charles Koonce, to remain in possession as their tenants. Although it is claimed by appellant that the Blacks and Hammonds were holding under him from the time of his purchase from the trustee, yet he admits that they were taxed with it and paid the taxes all that time. If it be true that the lien of the vendor, Vinson, could only be enforced in a court of equity, then it follows that a sale made in the ordinary

way, as under a deed of trust properly executed, would be a nullity, and the purchaser would take no title. This being the source of the title taken by S. C. Koonce from Trustee Ratliff, he had no title to convey to Charles Koonce, and the title is still vested in the Black and Hammond women. It is contended by appellants that they are, at least, entitled to a decree for a lien on the lands for the amount of the purchase money paid by S. C. Koonce under the deed of trust, with interest. S. C. Koonce paid for said deed of trust, and took an assignment thereof to himself, the sum of five thousand five hundred dollars of the money of A. M. Black, one of the debtors, and paid with his own funds the residue of the amount due Vinson, the sum of three thousand two hundred and fifty-four dollars and nineteen cents, on the 8th day of November, 1877. This purchase money due Vinson was assignable, together with the equitable lien to secure the same. 2 Sugd. Vend. (8th Am. Ed.) 398; *Griffin* v. *Camack,* 36 Ala. 695; *Griggsby* v. *Hair,* 25 Ala. 327; *McAlpin* v. *Burnell,* 19 Tex. 497; *Rakestraw* v. *Hamilton,* 14 Iowa, 147; *Cummings* v. *Oglesby,* 50 Miss. 153; *Boies* v. *Benham.* 127 N. Y. 620, (28 N. E. 657), 14 L. R. A. 55; *Henderson* v. *Goode,* (C. C.) 49 Fed. 887. In *Board* v. *Wilson,* 34 W. Va. 609, (12 S. E. 778), it is held: "The assignee of a single bill, which was executed for the purchase money of a tract of land, has the right to assert and enforce the vendor's lien in a court of equity, whenever such vendor would be entitled to enforce the same." *Poe* v. *Paxton's Heirs,* 26 W. Va. 607; *James* v. *Burbridge,* 33 W. Va. 272, (10 S. E. 396). The sum of three thousand two hundred and fifty-four dollars and nineteen cents, the amount paid from his own funds by S. C. Koonce to Vinson for the purchase and assignment thereof, with interest from November 8, 1877, the date of the assignment, is the first lien upon the property, and in favor of the assignee of Vinson.

Appellees claim that there was returned to S. C. Koonce by Black & Hammond four items—, one of six hundred dollars, from James Black in a mineral land transaction with John Bartram; one of six hundred dollars, paid him by the government for "damages;" one of three hundred and fifty dollars, paid by James Black in a land sale; and

one of two thousand five hundred dollars, from Grove. As to the first item, Bartram says the Blacks let him have a mule team in the transaction, but all he knows of the matter was an understanding he had from the Blacks, but in the absence of Koonce; and Koonce says the Hammonds nor Blacks had anything to do with it, as far as he knew. The six hundred dollars paid by the government for damages was paid to the executors of Charles Koonce, while the Grove claim of two thousand five hundred dollars was a claim Grove had against A. M. Black and Hammond for something like three thousand dollars, which Koonce purchased on compromise from Grove, or paid with two thousand three hundred dollars as appears from the record. Appellant insists that, because of the laches of plaintiffs in bringing their suit, they should not be granted relief, and cites many authorities to sustain his position, which, if applicable, would probably be a good defense; but in the case at bar the legal title was vested in the wives of the debtors, without consideration, for the purpose of hindering, delaying, and defrauding their creditors, with the full knowledge and connivance of the defendant, who made the pretended purchase under the pretended deed of trust. The title remained in the women, and they remained in the possession of the property, living on it, enjoying the rents, issues, and profits, until long after this suit was brought; and it was instituted before the statute of limitations had run, and there is no pretense of pleading the statute of limitations. If the deed of trust had been valid, and conveyed the title, and a sale had been had under it, and the property had passed into the hands of an innocent purchaser, plaintiffs might well be charged with laches. The most of the judgments were recovered against Black & Hammond in the summer and fall of 1877, some months before the attempted sale under the deed of trust, and several of the judgments were rendered in the month immediately preceding the date on which appellant purchased the residue of the debt due to Vinson for the purchase money. For the reasons herein stated, the decree will be reversed, and the cause remanded for further proceedings to be had therein.

*Reversed.*